687 S.E.2d 768

### MOUNTAIN AMERICA, LLC, et al, Petitioners Below, Appellants,

v.

### Donna HUFFMAN, Assessor of Monroe County, Respondent Below, Appellee.

No. 34426.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2009.

Decided Nov. 25, 2009.

---

Michael E. Caryl, Robert S. Kiss, Heather Gail Harlan, Bowles Rice McDavid Graff & Love, Charleston, WV, for Appellants.

Jack C. McClung, West Virginia Association of County Officials, Charleston, WV, for Amicus Curiae.

John F. Hussell, IV, Katie L. Hoffman, Joseph J. Buch, Dinsmore & Shohl, Charleston, WV, for Appellee, Donna Huffman.

Paul G. Papadopoulos, Robinson & McElwee, Charleston, WV, for Appellee, Monroe County Commission.

BENJAMIN, Chief Justice:

The instant action is before this Court upon the appeal of Mountain America, LLC, and several other individual landowners below [hereinafter "Appellants"] from a January 28, 2008, order of the Circuit Court of Monroe County denying the Appellants' Petition for Appeal from *Ad Valorem* Property Tax Assessments. Herein, Appellants allege

that the circuit court erred in affirming the decision of the Monroe County Commission to uphold the property tax assessments made by the County Assessor, Donna Huffman. Specifically, the Appellants assert that the tax assessments are excessive and unequal as compared to the 2007 tax assessments of the property of other taxpayers in Monroe County, and that the assessments are the result of the Assessor's improper and discriminatory methods in violation of the Appellant's rights to equal and uniform taxation under the West Virginia Constitution and in violation of the Appellant's rights to equal protection of the law under the United States Constitution. In addition, Appellants assert that the process by which they seek review of the assessments before the County Commission violates their rights to due process.

In response, the Assessor alleges that she utilized the correct valuation in determining the "true and actual value" of the residue of property owned by Mountain America, LLC, as prescribed by the West Virginia Legislature and other state regulations, and that the taxpayers failed to present evidence at the Board of Equalization and Review hearing that the Assessor had significantly overvalued their properties. She also asserts that Appellants' constitutional arguments lack merit because this Court has already considered the Appellants' due process and equal protection arguments on prior occasions and found that the taxpayer appeal process is constitutional. Furthermore, she argues that the circuit court correctly found that the case file did not reflect who the taxpayers were or what specific lots were at issue, thus, the other individual taxpayers did not perfect an appeal.

The Monroe County Commission responds and argues that the raw data provided during the hearing showed that the residue was assessed at a rate which was absolutely reasonable on its face, the taxpayers did not meet their burden to show that the assessment was excessive, and the taxpayers did not submit necessary evidence as to what actually was the "true and actual value" of their property. It also argues that the circuit court correctly refused to consider any of the taxpayers' arguments regarding alleged inherent flaws in the property appeals system, as these issues were beyond the scope of an appeal and thus, more appropriate for an independent action. Likewise, the County Commission also argues that Mountain America was the only petitioner to perfect its right to appeal the County Commission's decision.[1]

This Court has before it the petition for appeal, all matters of record and the briefs and arguments of counsel. For the reasons expressed below, the January 28, 2008, order of the Circuit Court of Monroe County is affirmed.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The Appellants are the owners and developer of lots located within Walnut Springs Mountain Reserve [hereinafter "Walnut Springs"] in Monroe County, West Virginia. Walnut Springs is a residential development comprised of approximately 1,000 acres located on Bud Ridge Road near Union, West Virginia. During the last few years, Mountain America, LLC [hereinafter "Mountain America"] and its affiliated entities have undertaken to develop Walnut Springs into a residential housing development with related amenities. Mountain America and its affiliated entities have been selling tracts of property located in Walnut Springs since September 2004. Walnut Springs remains in the early stages of development.

Donna Huffman is the duly elected Assessor of Monroe County. Pursuant to West Virginia Code § 11–3–1(1977) (Repl. Vol. 2008), Ms. Huffman is charged with annually assessing the true and actual value of all property located within Monroe County by July 1. During the period from July 1, 2006, to January 31, 2007, Ms. Huffman and her staff [hereinafter collectively referred to as "the Assessor"] ascertained the true and actual value of all property, real and personal,

---

1. We wish to also acknowledge the Amicus Curiae brief filed by the West Virginia Association of County Officials and appreciate its participation in this proceeding.

subject to *ad valorem* property taxation located within the county.[2]

During the period of July 1, 2005, to June 30, 2006, the purchase price of the unimproved real property sold by Mountain America and its affiliated entities was significantly higher than any other unimproved real property being sold elsewhere in Monroe County. As a result of the higher consideration being paid for the lots located in Walnut Springs, the Assessor, after consulting with the State of West Virginia Department of Revenue, created a new "neighborhood" which contained all of the real property located in the Walnut Springs development.[3] The Assessor undertook the valuation of real properties owned by the Appellants in Walnut Springs, which, on July 1, 2006, included some developed lots and undeveloped residue. In creating the neighborhood, the Assessor considered the following information concerning the real property: parcel size, roads, topography, cost, type, and quality of improvements.[4] In calculating the 2007 real property assessments for Walnut Springs, the Assessor compiled a list of sales in the development for the period from July 1, 2005,

to June 30, 2006. She then calculated the price per acre for each sale which occurred during that time period. Once the price per acre for each sale was calculated, she took the average of all sales during that period. The calculated unit price per acre was $29,236., a figure significantly higher than any other real property sales in Monroe County.[5]

As an accommodation to the landowners, the Assessor attempted to lower the per acre assessment in the neighborhood by striking the two highest sales and the two lowest sales and recalculating the average price per acre. The calculated unit price per acre based on actual sales was $28,502. She then entered the neighborhood information into the real estate mass appraisal software (CAMA), and again lowered the assessment per acre to $26,900 in a further attempt to lower the tax burden on the landowners.[6] Once all of the information was entered into the CAMA software, the residual property value for the neighborhood was calculated at $5,400 per acre, a figure significantly lower

2. For a definition of "true and actual value", see note 25, *infra*.

3. Pursuant to State Tax Department Administrative Notice 2006-16 (Jan. 31, 2006), a "neighborhood" is defined as a "geographical area exhibiting a high degree of homogeneity in residential amenities, land use, economic and social trends, and housing characteristics."

4. Walnut Springs is subject to those certain "Amended and Restated Declaration of Covenants, Conditions, Restrictions, Reservations, and Easements for Walnut Springs Mountain Reserve a Residential Home Development Near Union, West Virginia dated April 8, 2005" which is of record in the Office of the Clerk of the Monroe County Commission in Deed Book 242, at Page 398. The restrictive covenants provide that the "lots shall be used for residential and personal recreation purposes; no business, commercial or professional enterprises which regularly attract customers, patrons, or clients shall be permitted or conducted thereon, except as approved by the Developer." Said restrictions and covenants are recited in the deeds for individual parcels which have been conveyed by Mountain America and the other entities. Based upon the restrictive covenants, the Assessor assessed the residue of Walnut Springs development as undeveloped residential property. For the 2007 tax year, all of the real property owned

by Mountain America and its related entities was assessed as "residue," resulting in a lower assessment than would occur if the remaining real property was assessed as individual lots as marketed by the developer.

5. In assessing each property parcel in Walnut Springs, the Assessor verified the property owner's name, address, and the description of the real property. Following each transfer of real property in Monroe County, the Assessor mailed to the purchaser a "Classification and Sales Confirmation Questionnaire" to confirm that the sales price of the property was the actual market value of the real property transferred. In addition, the Assessor visually inspected the real property, determined the property class, recorded the neighborhood code, and determined the infrastructure of the development. Currently, all vacant property in Walnut Springs is assessed as Class III property. Class I property consists of intangibles such as taxable stocks, bonds and promissory notes. Owner-occupied properties used exclusively for residential purposes and farms are Class II property. Property that is not Class I or II property is considered Class III property, if it is located outside of a municipality. If such property is located within a municipality, it is considered Class IV property.

6. The total taxable value for all of the sold lots within Walnut Springs was $9,167,160.

than the asking price for such acreage.[7] On or about January 9, 2007, the Appellants were provided a "Notice of Increase of Assessment" of real property for the 2007 tax year. Specifically, the Assessor notified the landowners that the assessed value of their properties would increase by at least ten percent from the previous tax year.[8]

On February 7, 2007, the Appellants appeared by counsel before the County Commission sitting as the Board of Equalization and Review in order to protest the 2007 *ad valorem* tax assessments of their properties within Walnut Springs.[9] At the February 7, 2007 hearing, the Appellants claimed that the assessments of their property for the period from July 1, 2006, to January 31, 2007, were excessive and exceeded their true and actual value.[10] The Appellants offered testimony from their expert general real estate appraiser, Todd Goldman, at the hearing. Mr. Goldman presented a statistical analysis which compared the assessments of properties within Walnut Springs to those of properties located in Monroe County outside of Walnut Springs. Mr. Goldman also compared assessments in the county to recent transactions, and he opined that comparable property in surrounding areas was assessed at lower values. However, he did not appraise any of the Appellant's properties at

issue, or any other property which was the subject of his statistical analysis. Furthermore, the Appellants did not present any evidence of what they paid for the property, the listing price for the unsold lots, or other basic information as to the properties at issue. The Assessor testified at the hearing and explained the steps she took in arriving at the assessments. Representatives of the West Virginia Department of Tax and Revenue's property tax division were present at the hearing along with their counsel. After considering the testimony and evidence presented at the February 7, 2007, hearing, the County Commission issued an order on February 15, 2007, affirming the assessments on the basis that the methods of appraisal used by the Assessor were within the guidelines provided by law.

On March 14, 2007, Appellants filed a "Petition for Appeal from *Ad Valorem* Property Tax Assessments" in the Circuit Court of Monroe County. The County Commission and the County Assessor both filed responses in opposition to the appeal. On June 6, 2007, the County Commission filed a "Motion to Confirm Mountain America LLC as the Sole Property Owner which has Perfected an Appeal," wherein it asserted that under, West Virginia Code § 11–3–25 (1967)(Repl. Vol.

7. The undeveloped residential property within Walnut Springs had a total taxable value of $436,980.

8. As prescribed by West Virginia Code § 11–1C–1 (1990)(Repl. Vol. 2008), all real property located in the county is reassessed every three years. Additionally, it is the Assessor's duty to assess all real property at sixty percent of its fair market value. Prior to the election of Ms. Huffman as Assessor, Monroe County had historically assessed some real property in the County at an amount below sixty percent of its fair market value. The Assessor now asserts that, as a result of these prior deficiencies, she submitted a detailed plan of action to correct the deficiencies to the Property Valuation Training and Procedures Committee. In accordance with her plan, the Assessor increased all real property assessments throughout Monroe County by six percent for the 2006 tax year. Further, in accordance with the proposed plan of action, the Assessor increased all real property assessments throughout Monroe County fifteen percent for the 2007 tax year.

9. Although Mountain America took the lead in the case, notices were filed indicating that other individual property owners joined in the challenge. According to Mountain America, the Appellants' counsel and counsel for the County Commission entered into a written stipulation identifying the taxpayers who were challenging the valuation before the County Commission.

10. The taxpayers asserted that the Assessor's figure ranges from 15% to 438% of the prices that they each paid for their lots, with an average of 152% of what they paid. They argued that for tax year 2007, there was an aggregate increase in the taxable values of all land in Monroe County of $29,591,216 and that 36.86% of the increase was solely attributable to increases in the assessed values of their properties, even though Walnut Springs is just 1% of the taxable land in the county. The taxpayers further asserted that for several years, the County Assessor undervalued properties county-wide and that the State Tax Department performed multiple audits confirming this. The taxpayers argued that they were being singled out for discriminatory treatment because their property was greatly overvalued, while other, similar properties are greatly undervalued.

2008)[11], Mountain America was the only party that had properly perfected an appeal to the circuit court because rather than name each petitioner in the appeal, the circuit court petition only referred to "Mountain America, LLC et al." Thus, the County Commission alleged that the circuit court petition failed to set forth with particularity or otherwise identify by name which property owners, other than Mountain America, filed an appeal with the circuit court. On July 18, 2007, the circuit court entered an order granting the County Commission's motion, reasoning, in part, that:

> To this date, some four months after the appeal was filed, it is impossible to pick up the court file and determine the name of the Appellants or the tax parcels in question. A review of the record of the hearing before the Board of Equalization reveals the names of at least some of the persons contesting their assessments, but this is insufficient for purposes of West Virginia Rules of Civil Procedure Rule 10. The burden here is clearly on the person seeking to appeal, to identify the names of the persons seeking to appeal with some particularity in the initial filings in circuit court.

Thus, the circuit court ruled that the matter would proceed with Mountain America as the sole Appellant and that the style of the case should be amended to delete the term "et al."

Following this ruling, the taxpayers then moved to amend their Petition for Appeal seeking permission to argue that by filing a response to their Petition for Appeal, the County Commission demonstrated an inherent bias and conflict of interest, and that the property tax appeals process itself violated their due process rights and was therefore unconstitutional. The circuit court denied permission to amend, finding that the constitutional issues raised were beyond the scope of the original petition and constituted a separate and distinct declaratory action, and thus would be best raised in an independent action since it would prejudice Appellees to allow the mid-appeal amendment.

11. West Virginia Code § 11–3–25 provides that any person claiming to be aggrieved by an as-

Subsequently, the circuit court then accepted the briefs on the merits of Mountain America's appeal and heard the oral arguments of counsel. By order entered January 28, 2008, the circuit court affirmed the decision of the County Commission finding that "the Assessor acted in conformity with the statutory authority, state regulations, and case law" and "valued the property appropriately within the guidelines prescribed by the West Virginia Code." The circuit court further found that "the County Commission properly weighed the evidence before it and did not err in its decision to uphold the assessments made by the Assessor." It is from that order that Appellants now appeal.

## II.

### STANDARD OF REVIEW

The Appellants assign five errors to the circuit court's ruling. Specifically, Appellants allege that the circuit court erred in: (1) affirming the failure of the County Commission to equalize the 2007 taxable values of the taxpayers' properties in violation of mandate of the West Virginia Constitution that taxation must be equal and uniform throughout the state; (2) concluding that the excessive and unequal 2007 tax assessments of the taxpayer's properties were not the result of intentional and systematic under-assessments by the County Assessor of other taxpayers' properties in Monroe County in violation of the taxpayers' constitutional rights to equal protection of the law; (3) concluding that West Virginia's statutory system for review of property tax assessments did not violate the taxpayers' rights to due process of law; (4) concluding that the particular manner by which the County Commission used the procedures for review of the Taxpayers' property assessments did not violate their rights to due process of law; and (5) in denying the right of all but one of the taxpayers to any judicial review of the decision of the County Commission sustaining the excessive and unequal taxable values of their property.

sessment must appeal to the circuit court within thirty days of adjournment of the Commission.

■ Given the various assignments of error raised, our standard of review is multi-faceted. We have held that " '[t]his Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*' Syllabus Point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996)." Syl. Pt. 1, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community,* 223 W.Va. 14, 672 S.E.2d 150 (2008). With respect to questions of law raised regarding the constitutionality of the governing statutes, we employ a *de novo* standard of review. *Id.* at 155. Furthermore, " '[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syl. Pt. 1, *West Penn Power Co. v. Board of Review and Equalization,* 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted)." *Id.* at Syl. Pt. 3. Guided by these standards, we proceed to consider the arguments before us.

### III.

### DISCUSSION

#### A. Perfection of Appeal from Board of Equalization and Review to Circuit Court

In order to establish the proper parties to the instant appeal, we will first address the last assignment of error presented by the Appellants, whether the circuit court erred as a matter of law in denying all but one of the taxpayers judicial review of the decision of the County Commission. On July 18, 2007, the circuit court entered an order granting the County Commission's "Motion to Confirm Mountain America LLC as the Sole Property Owner which has Perfected an Appeal," reasoning, in part, that:

> To this date, some four months after the appeal was filed, it is impossible to pick up the court file and determine the name of

the Appellants or the tax parcels in question. A review of the record of the hearing before the Board of Equalization reveals the names of at least some of the persons contesting their assessments, but this is insufficient for purposes of West Virginia Rules of Civil Procedure Rule 10. The burden here is clearly on the person seeking to appeal, to identify the names of the persons seeking to appeal with some particularity in the initial filings in circuit court.

The circuit court ruled that the matter would proceed with Mountain America as the sole Appellant and ordered that the style of the case should be amended to delete the term "et al."

Herein, Appellants allege that the circuit court erred in granting the County Commission's "Motion to Confirm Mountain America LLC as the Sole Property Owner which has Perfected an Appeal" because numerous taxpayer notices were filed with the County Commission and all of the individually-named taxpayers were clearly identified in a written stipulation in the Commission's record.[12] Additionally, Appellant's allege that at the beginning of the hearing before the County Commission, the taxpayer's counsel presented copies of the Notices of Assessment for each party appealing.

Conversely, the Assessor and the County Commission assert that the circuit court correctly found that the case file did not reflect who the taxpayers were or what lots were at issue because the appeal in the circuit court purported to be filed by "Mountain America, LLC" and "several dozen individuals and entities" was styled "Mountain America, et al." Thus, they contend that no taxpayer other than Mountain America complied with the jurisdictional requirement of filing an appeal within thirty days, as required by West Virginia Code § 11–3–25. Additionally, the County Commission argues that the stipulation to which the taxpayers refer is not relevant because it addressed who was a party before the Board of Equalization and Review, not who was a party before the circuit court.

**12.** In the instant Petition for Appeal, Appellants identify over fifty separate individually-named petitioners.

In further response to Appellant's argument, Appellees also allege that the individually-named taxpayers' instant appeal is untimely because the circuit court's July 18, 2007, order granting the County Commission's "Motion to Confirm Mountain America LLC as the Sole Property Owner which has Perfected an Appeal" was a final adjudication on the merits with respect to the other taxpayers. Appellees allege that the order amounted to a judgment on the pleadings pursuant to Rule 12(c) of the *West Virginia Rules of Civil Procedure*, and thus, the other individually-named taxpayers were required to appeal to this Court within four months of the July 18, 2007 order.

In their reply, Appellants assert that the circuit court's order was interlocutory, not final, in nature, and thus, the instant appeal is not untimely. Appellants alternatively allege that if the circuit court's July 18, 2007, order was final in nature, they could still intervene in the appeal given their interest in the issues involved. Appellants cite to *In Re Elk Sewell Coal*, 189 W.Va. 3, 427 S.E.2d 238 (1993), for the proposition that there is standing to intervene in a property tax appeal when a relevant issue emerges at the appellate stage.

### 1. Timeliness of Instant Appeal

█ In assessing whether the other taxpayers' appeal herein is timely, we find that the circuit court's order entered on July 18, 2007, was in fact interlocutory for purposes of determining whether the other taxpayers were required to appeal the circuit court's decision at that time. "[E]ven if an order as to fewer than all claims or parties is not certified by a circuit court, it may nevertheless be considered final if it approximates a final order in its nature and effect." *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 549, 584 S.E.2d 176, 183 (2003). However, even if a final order as to fewer than all claims or parties was intended, which is not evident, "although the order is immediately appealable upon its entry, appeal need not be taken, but may be taken at any time until the last order terminating the entire action expires." *Id.*

Even though the circuit court's July 18, 2007, order essentially dismisses any claim of the Appellants other than Mountain America and was, thus, in effect, a final adjudication in nature ending litigation on the merits insofar as it related to the interests and claims of such party Appellants other than Mountain America, the circuit court did not expressly direct, as required by Rule 54(b) of the *West Virginia Rules of Civil Procedure*, the entry of a final judgment as to those parties or make an express finding that there was "no just reason for delay." Therefore, while the remaining party Appellants could have, pursuant to *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176, appealed the circuit court's decision immediately following entry of the July 18, 2007, order because it dismissed them from the litigation, they were not specifically required to appeal at that time because entry of a Rule 54 final judgment was not expressly directed. Consequently, we find that the instant appeal of those named party Appellants is timely.

### 2. Particularity of Identification Needed of Those Appealing Assessment

█ Having determined that the party Appellants are properly before us, we now turn to the issue of whether such Appellants properly perfected an appeal to the circuit court. There is no dispute that Mountain America properly perfected its appeal to the circuit court. However, with respect to the other landowners, we conclude that the circuit court did not err in ruling that such Appellants did not properly perfect an appeal.

West Virginia Code § 11–3–25 provides that:

> Any person claiming to be aggrieved by any assessment in any land or personal property book of any county who shall have appeared and contested the valuation ... may, at any time up to thirty days after the adjournment of the county court, apply for relief to the circuit court of the county in which such books are made out;
> ...

W. Va.Code § 11–3–25. Herein, the petition for appeal filed before the circuit court was purported to be filed by Mountain America and "several dozen individuals and entities." However, the circuit court petition failed to

set forth with particularity or otherwise identify by name which property owners, other than Mountain America were filing an appeal. In determining that Mountain America was the sole property owner which properly perfected its appeal, the circuit court reasoned, in part, that:

> [i]n this matter, neither the initial order, the petition, nor the civil information case sheet reflects the identity of any petitioner other than Mountain America, LLC. .

> . . .

> Rule 10 of the Rules of Civil Procedure requires that "in the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties." Rule 20 allows joinder of multiple parties. The Petition filed in this proceeding is silent to the names of the Appellants, other than Mountain America, LLC.

> Persuasive authority of a neighboring jurisdiction has held that a petition for appeal which names only one of multiple complainants, appeals only the cause of the complainant named and is "wholly insufficient as a petition · for an appeal by any person other than the person named." *Carlton v. Paxton*, 14 Va.App. 105, 415 S.E.2d 600 (Va.App.1992), *citing Challice v. Clark*, 163 Va. 98, 102, 175 S.E. 770, 770–71 (1934).

> . . .

> Under the West Virginia Rules of Civil Procedure, the initial pleading in an appeal from the Board of Equalization must contain the names of the parties. This is necessary so that the court record clearly reflects who is appealing the decision of the Board of Equalization. To this date, some four months after the appeal was filed, it is impossible to pick up the court file and determine the name of the Appellants or the tax parcels in question. A review of the record of the hearing before the Board of Equalization reveals the names of at least some of the persons contesting their assessments, but this is insufficient for purposes of West Virginia Rules of Civil Procedure Rule 10. The burden here is clearly on the person seeking to appeal, to identify the names of the persons seeking to appeal with some particularity in the initial filings in circuit court. This Court recognizes that the statutory procedure in tax appeals is somewhat archaic, however when the appeal reaches circuit court, it is governed by the Rules of Civil Procedure which clearly requires the names of the parties in the initial filing . . .

■ While we appreciate Appellants' contention that the identity of each and every one of the Appellants had been stated for the record at the outset of the evidentiary hearing before the County Commission, and that the record below contains a stipulation with regard to the taxpayers and tracts of land at issue at the February 7, 2007, hearing before the Board of Equalization and Review, the fact that certain property owners were involved in the February 7, 2007, hearing does not have any bearing on whether the property owners properly perfected their appeal of the Board of Equalization's determination to the circuit court. We, too, find persuasive the authority of our neighboring state, Virginia; and find that a petition for appeal which names only one of multiple complainants, appeals only the cause of the complainant named and is "wholly insufficient as a petition for an appeal by any person other than the person named." *Carlton v. Paxton*, 14 Va.App. 105, 116, 415 S.E.2d 600, 606 (1992) (*citing Challice v. Clark*, 163 Va. 98, 102, 175 S.E. 770, 770–71 (1934) ).[13]

---

**13.** Michie's Jurisprudence of Virginia and West Virginia provides:

> An appellant is one who has presented his petition to the supreme court for an appeal, showing that he is aggrieved, or has united with others in an appeal setting forth his grievances by pointing out the error of the lower court. **Parties not named cannot become appellants by virtue of a petition in the name of** **one person on behalf of himself and a number of others whose names are not mentioned. The only appellant in such case is the person whose name appears in the petition. To be an appellant the party must by name unite in the petition for appeal.** The doctrine of parties by representation has no application to such a case.

Furthermore, we have continually held that appeal deadlines and procedures are jurisdictional in nature. *See Helton v. Reed,* 219 W.Va. 557, 638 S.E.2d 160 (2006).[14] Because we conclude that the circuit court did not err in finding that Mountain America was the only party that properly perfected its appeal before the circuit court, we decline to set aside the circuit court's July 18, 2007, order and we proceed to consider the remaining assignments of error only as they pertain to Mountain America.[15]

## B. Constitutionality of Tax Assessment Review System

■ In now turning to the substantive issues on appeal, Mountain America complains that both expressly and through their practical operation as applied herein, West Virginia's statutory system for review of property tax assessments violates taxpayers' rights to due process under the state and federal constitutions. Specifically, Mountain America contends that it lacked the right to present that challenge before an impartial tribunal, was subject to an unconstitutionally excessive burden of proof, lacked meaningful notice of the government's taking of its money and

meaningful opportunity to prepare and present a challenge to the taking.

Appellees generally respond that these issues are not properly before this Court because following the circuit court's decision finding that Mountain America was the only party that had properly perfected an appeal, the taxpayers then moved to amend their Petition for Appeal seeking permission to add the above-noted constitutional claims and the circuit court denied permission to amend, finding that the constitutional issues raised were beyond the scope of the original petition and constituted a separate and distinct declaratory action, and thus would be best raised in an independent action.

■ Despite the fact that these issues were not adjudicated by the circuit court below, we nevertheless may consider them for the first time on appeal to this Court if we determine that the constitutionality issues are central to our disposition in this case. "A constitutional issue that was not properly preserved at the trial court level may, in the discretion of this Court, be addressed on appeal when the constitutional issue is the controlling issue in the resolution of the

1B Michie's Jurisprudence *Appeal and Error* § 121, at 290 (Repl. Vol. 2008)(emphasis added)(*citing Challice v. Clark,* 163 Va. 98, 175 S.E. 770 (holding that petition was wholly insufficient as a petition for appeal by any person other than Nettie O. Challice, and appeal must be treated as an appeal by her alone, where petition began "Your petitioner, Nettie O. Challice, et als, respectfully represents that they are aggrieved")).

14. In *Helton v. Reed,* the taxpayer filed its severance tax appeal with the wrong tribunal. We held that the taxpayer was not permitted to cure this filing defect on the grounds that "filing requirements established by statute ... are not readily susceptible to equitable modification or tempering." In so ruling, we cited to several cases as examples of this principle of law:

*Concept Mining, Inc. v. Helton,* 217 W.Va. 298, 617 S.E.2d 845 (2005)(Tax Commissioner's intent was irrelevant and procedural error prohibited consideration of Commissioner's appeal); *State ex rel. Clark v. Blue Cross Blue Shield of W. Va., Inc.,* 195 W.Va. 537, 466 S.E.2d 388 (1995)(strict deadlines in insurance solvency cases); *Solution One Mortg., LLC v. Helton,* 216 W.Va. 740, 613 S.E.2d 601 (2005)(tax statutes which require the giving of bond as a prerequisite to the prosecution of an appeal are strictly construed and their require-

ments are mandatory and jurisdictional.) *See also Elk Run Coal Company v. Babbitt,* 930 F.Supp. 239 (S.D.W.Va.1996)(government could not appeal due to missed deadline); *Bradley v. Williams,* 195 W.Va. 180, 465 S.E.2d 180 (1995)(taxpayer's failure to abide by the express procedures established for challenging a decision of the West Virginia State Tax Commissioner precludes the taxpayer's claim for refund or credit); *Webb v. U.S.,* 66 F.3d 691 (4th Cir.1995)(no equitable tolling of tax filing deadlines) ...
*Helton v. Reed,* 219 W.Va. at 561, 638 S.E.2d at 164.

15. Moreover, in assessing whether the other named party Appellants alternatively have a right to now intervene in the instant appeal, while arguably the overall *ad valorem* tax valuation of the property in a subdivision originally developed by Mountain America is of interest to the persons who purchased property within the subdivision, we find that this casual interest in the taxable valuation of the unsold residue is insufficient to permit those persons to now become Appellants to an appeal from an order of the circuit court to which they were not subject. The other taxpayers were not parties to the tax valuation appeal before the circuit court. Accordingly, they continue to remain strangers to this Court.

case." Syl. Pt. 2, *Louk v. Cormier*, 218 W.Va. 81, 622 S.E.2d 788 (2005).

Mountain America asserts that West Virginia Code § 11–3–24 is facially unconstitutional for several reasons. First, Mountain America asserts that the County Commission has an inherent bias because its primary responsibility is the superintendence of its county's fiscal affairs. Thus, it argues that it was denied due process by having to present its property tax assessment appeal to the County Commission, sitting as the Board of Equalization and Review. Second, Mountain America contends that bias exists because West Virginia Code § 11–3–24 directs the county assessor to attend and render every assistance possible to the County Commission in connection with such proposed taxable values. Thus, the Assessor is a statutorily assigned advocate for the Board's interests in maximizing its revenue. Likewise, Mountain America contends that under West Virginia Code § 7–4–1 (1971)(Repl. Vol. 2006) [16], the County Prosecuting Attorney is the general legal counsel to the County Commission. Additionally, Mountain America takes issue with the time frames established for such appeals, and asserts that it lacked meaningful notice of the government's taking of its money and meaningful opportunity to prepare and present a challenge to the taking. It alleges that this short time, coupled with the clear and convincing burden of proof imposed upon taxpayers, makes the appeals process unconstitutional.

Pursuant to West Virginia Code § 11–3–24, all county commissions are required to annually sit as a board of equalization and review "for the purpose of reviewing and equalizing the assessment made by the assessor." [17] It is also statutorily mandated that "[c]ounty commissions ... shall ... have the superintendence and administration of the ... fiscal affairs of their counties." W. Va. Const. art. IX, § 11. We recently had opportunity to visit the issue of whether West Virginia Code § 11–3–24 is constitutional insofar as it requires county commissions to sit as boards of equalization and review, and we found that this statute is facially constitutional. *See* Syl. Pt. 4, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (holding that "W. Va.Code § 11–3–24 (1979) which establishes the procedure by which a county commission sits as a board of equalization and review and decides taxpayers' challenges to their property tax assessments, is facially constitutional."). In *Foster*, we also determined that the County Commission's overarching interest, as the governmental body charged with superintendence of the fiscal affairs of the county, in the outcome of every challenge to its tax base, was not a sufficient conflict of interest to support a taxpayer's due process violation claim in deciding the outcome of such challenges. *Id.* at 160. Furthermore, we held that "[r]equiring a taxpayer challenging a property tax assessment in accordance with W. Va.Code § 11–3–24 (1979)(Repl. Vol. 2008) to prove by clear and

16. West Virginia Code § 7–4–1 provides, in part, that:

It shall also be the duty of the prosecuting attorney to attend to civil suits in such county in which the ... commission or board thereof, is interested, and to advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county board of education is interested.

17. West Virginia Code § 11–3–24 provides, in pertinent part:

The county commission shall annually ... meet for the purpose of reviewing and equalizing the assessment made by the assessor ... At the first meeting, the assessor shall submit the property books for the current year, which shall be complete in every particular, except that the levies shall not be extended. The

assessor and his assistants shall attend and render every assistance possible in connection with the value of property assessed by them. The commission shall proceed to examine and review the personal property and the description and value of real estate liable to assessment which was omitted by the assessor. They shall correct all errors in the names of persons, in the description and valuation of property, and they shall cause to be done whatever else may be necessary to make the valuation comply with the provisions of this chapter. But in no case shall any question of classification or taxability be considered or reviewed. If the commission determine[s] that any property or interest is assessed at more or less than its true and actual value, it shall fix it at the true and actual value ...

convincing evidence that the assessor's assessment is erroneous does not violate the constitutional due process protections provided by section one of the Fourteenth Amendment to the United States Constitution or by section ten of Article III of the West Virginia Constitution." *Id.*, Syl. Pt. 6; *See also Bayer MaterialScience, LLC v. State Tax Commissioner*, 223 W.Va. 38, 672 S.E.2d 174.[18] Generally, we have also recognized with respect to legislative enactments pertaining to taxation that "[s]tatutes governing the imposition of taxes are generally construed against the government and in favor of the taxpayer. However, *statutes establishing administrative procedures for collection and assessment of taxes will be construed in favor of the government.*" Syl. Pt. 1, *Calhoun County Assessor v. Consolidated Gas Supply Corp.*, 178 W.Va. 230, 358 S.E.2d 791 (1987)(emphasis added).

█ Because this Court, in our existing precedent, has resolved the issue of the facial constitutionality of West Virginia Code § 11–3–24 as it pertains to the issues of whether the county commission may impartially sit as the board of equalization and review and the constitutionality of the burden of proof imposed upon taxpayers challenging a tax assessment on appeal, we need not here analyze these particular arguments any further. However, our analysis does not conclude there. In addition to arguing that West Virginia Code § 11–3–24 is facially unconstitutional for the reasons stated above, Mountain America also contends that the statute is unconstitutional as applied to the facts of this case. Specifically, it argues that the inherent bias that already exists in this statutory system is particularly exacerbated in this case because: (1) the county commission has appeared as a party litigant adverse to its

appeal; (2) the salaries authorized for the members of the Commission increased by $660.00 per member as a result of the excessive assessments; and (3) it was not given meaningful notice of the government's taking of its money and meaningful opportunity to prepare and present a challenge to the taking.

█ "To establish that a taxing statute, valid on its face, is so unreasonable or arbitrary as to amount to a denial of due process of law when applied in a particular case, the taxpayer must prove by clear and cogent evidence facts establishing unreasonableness or arbitrariness." Syl. Pt. 4, *Norfolk and Western Railway Company v. Field*, 143 W.Va. 219, 100 S.E.2d 796 (1957); Syl. Pt. 2, *State ex rel. Haden v. Calco Awning & Window Corp.*, 153 W.Va. 524, 170 S.E.2d 362 (1969). "Cogent" is defined as "[c]ompelling or convincing." Black's Law Dictionary 295 (9th ed. 2009). Thus, "clear and cogent evidence" may also be construed as "clear and convincing evidence." *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14 n. 13, 672 S.E.2d at 158 n. 13 (*citing McKesson Water Prods. Co. v. Director, Div. of Taxation*, 23 N.J.Tax 449, 456 n. 3 (N.J.Super.Ct.App.Div.2007)).

As it pertains to Mountain America's argument that its due process rights were violated because the County Commission filed an answer to the Appellants' Petition for Appeal to the Circuit Court and thus became a party to this proceeding, we find that this argument lacks merit. County commissions have often been made parties to these types of appeals. Indeed, County Commissions have made numerous appearances in these types of appeals before this Court.[19] By

18. Note that while the author of this opinion may personally disagree with the clear and convincing burden of proof standard imposed upon taxpayers appealing *ad valorem property* tax assessments, *see In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (Benjamin, J. dissenting), it is observed that the instant case is governed by the principles of stare decisis.

19. *See, e.g., Bayer MaterialScience, LLC v. State Tax Commissioner*, 223 W.Va. 38, 672 S.E.2d 174 (Kanawha County Commission appeared as par-

ty); *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (Cabell County Commission appeared as party); *Central Realty Co. v. Board of Equalization and Review of Cabell County*, 110 W.Va. 437, 158 S.E. 537 (1931); *Gilbert v. County Court of Wyoming County*, 121 W.Va. 647, 5 S.E.2d 808 (1939); *In re Stonestreet*, 147 W.Va. 719, 131 S.E.2d 52 (1963) (defendants were Commissioners of the County Court of Calhoun County); *Tug Valley Recovery Center, Inc. v. Mingo County Commission*, 164 W.Va. 94, 261

filing a response to the Appellants' Petition for Appeal, the County Commission urged the circuit court to affirm its ruling that the assessments were proper. The County Commission's response was necessarily due to the fact that in making a ruling upholding the Assessor's valuation of Mountain America's residual property, the County Commission, sitting as the Board of Equalization and Review, was not statutorily required to issue a written opinion. Thus, by virtue of requiring a response to a petition for appeal from a County Commission decision, the circuit court was able to obtain information regarding the County Commission's reasoning in upholding the Assessor's valuations. When balancing the circuit court's interest in acquiring necessary information from the County Commission regarding its review of tax appeals, with the general due process interests of the taxpayers to be provided an avenue of appeal from a property tax assessment, we do not believe that this procedure necessarily demonstrates a level of bias constituting a deprivation of the Appellant's due process.

Furthermore, as to Mountain America's second argument regarding the direct pecuniary interest of the County Commission members in this case, to the extent that we have made the determination, as further discussed below, that the Assessor's valuation of Mountain America's residual property was not excessive, we need not address Appellant's argument that the members of the County Commission received increased salaries as a result of the assessment. Moreover, we seriously question whether a pay increase of $660.00 would in fact constitute a substantial pecuniary interest prohibiting the County Commission from adjudicating this dispute. *See, e.g., Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488, 500 (1973)(reiterating that "[i]t is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes.")

■ Lastly, with respect to Mountain America's contention that it was not given meaningful notice of the government's taking of its money and meaningful opportunity to prepare and present a challenge to the taking, we conclude otherwise.[20] Specifically, Mountain America argues that pursuant to West Virginia Code § 11–3–24, the County

S.E.2d 165 (1979) ("The respondents are elected members of the Mingo County Commission, and in this capacity, sat as a Board of Equalization and Review during the month of February 1978"); *The Great A & P Tea Co., Inc. v. J. Carney Davis, Assessor of Marion County, West Virginia, and Marion County Board of Review and Equalization,* 167 W.Va. 53, 278 S.E.2d 352 (1981); *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia and East Kentucky Energy Corp. v. County Commission of Webster County, West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989); *Eastern American Energy Corporation v. Robert W. Thorn, Assessor of Wirt County, and C. Richard Boice, Commissioner of the County Commission of Wirt County, Paul Bumgarner, Commissioner of the County Commission of Wirt County, and Harry Matheny, Commissioner of the County Commission of Wirt County, in their Capacities as County Commissioners and in Their Capacities as Members of the County Board of Equalization and Review,* 189 W.Va. 75, 428 S.E.2d 56 (1993); *Western Pocahontas Properties, Ltd. v. County Commission of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661 (1993); *In re Elk Sewell Coal,* 189 W.Va. 3, 427 S.E.2d 238 ("Ernest V. Morton, Jr., Pros. Atty., Webster Springs", attorney for Webster County Commission); *Rawl Sales & Processing Co. v. County Commission of Mingo County,* 191 W.Va. 127, 443 S.E.2d 595 (1994); *In re the Petition of Maple Meadow Mining Company for Relief from Real Property Assessment for the Tax Year 1992,* 191 W.Va. 519, 446 S.E.2d 912 (1994) ("Carl W. Roop, Canterbury, Poling & Roop, Beckley, for Raleigh County Commission"); *Bookman v. Hampshire County Commission,* 193 W.Va. 255, 455 S.E.2d 814 (1995); *In re the 1994 Assessments of the Property of Massimo A. Righini, Marilou M. Righini, J. David Magistrelli and Diane Magistrelli,* 197 W.Va. 166, 475 S.E.2d 166 (1996) ("Richard G. Gay, Berkley Springs, for Morgan County Commission"); *In re Tax Assessment Against American Bituminous Power Partners, L.P.,* 208 W.Va. 250, 539 S.E.2d 757 (2000) ("Frances C. Whiteman, Esq., Whiteman, Burdette & Radman, PLLC, Fairmont, West Virginia" is listed as "Attorney for Appellant Marion County Commission").

20. We must only consider the argument raised regarding the notice procedures and time for preparation on appeal as it specifically applies to Mountain America. To the extent that the Petition for Appeal in this case was filed on behalf of numerous individually-named Appellants who we have now determined did not properly perfect an appeal at the circuit court level, much of Appellants' argument on this issue is inapplicable.

Commission sits as the Board of Equalization and Review only during the month of February, thus leaving taxpayers with scarce time to prepare challenges to an assessment once notified. It asserts that its opportunity for review was even more abbreviated by the fact that the County Commission adjourned on February 15th, the earliest day that they were statutorily permitted to adjourn. Thus, the period of time allowed to receive the mailed notice sent by the Assessor, notify the Board of Equalization and Review of its desire to appeal, and prepare evidence to support its challenges of the proposed increase in the taxable value of its property was unreasonably compressed into three weeks. Mountain America asserts that, as a practical matter, timely access to information about the true and actual values of other comparable properties is integral to raising a challenge on appeal to the Board of Equalization and Review. It contends that the former can only be ascertained by engaging the services of a professional appraiser to survey recent sales of comparable properties, requiring that a Freedom of Information Act request be filed to obtain access to the assessor's proposed property books containing such data. Thus, it asserts that the constricted time frame for preparation of an appeal limits the effectiveness of such challenge.

Although Mountain America makes generalized arguments that the notice system set forth in West Virginia Code § 11-3-24 violates due process, it has not advised this Court of how it specifically suffered prejudice as a result of the "constricted" time frame upon appeal to the Board of Equalization and Review. There is no allegation that the hearing afforded Mountain America violated West Virginia Code § 11-3-24. Rather, the hearing afforded was in compliance with statutory requirements. Mountain America, however, has not explained what evidence it was prevented from presenting at the hearing due to insufficient time. In fact, Mountain America had adequate time to hire a real estate appraiser who appears to have performed the analysis asked of him by the Appellants, and who testified on its behalf at the hearing. However, the appraiser did not present any evidence to the County Commission as to what Mountain America paid for the land at issue, and what it expended in developing and improving the land. Mountain America also failed to present any evidence regarding the appraisal of its property which was prepared during the lending process, or to ask the appraiser to appraise its property for submission as evidence. It also failed to present evidence as to the listing price for any of the lots it had for sale in Walnut Springs. For these reasons, we find that Mountain America has not met its burden to prove by clear and cogent evidence the requisite facts establishing that the time frame for a tax assessment appeal under West Virginia Code § 11-3-24 is so unreasonable or arbitrary as to amount to a denial of due process of law in this case.

### C. Equal and Uniform Taxation

■■ In its remaining assignments of error, Mountain America asserts that the taxation of its property was not equal and uniform, and thus, was in violation of Article X, Section 1 of the West Virginia Constitution because its property was overvalued and comparable properties in the area were systemically undervalued.[21] Mountain America asserts that after two reviews in 2006, the State Tax Department determined that the Assessor had failed to update the taxable values of properties throughout Monroe County, including the areas in the immediate vicinity of Walnut Spring, and was thus valuing those properties at well below market value. It asserts that at the County Commission hearing, it presented evidence that proved that its property was overvalued by presenting expert testimony from Todd Goldman, an appraiser, who showed that the Assessor's valuation was excessive.[22]

21. Article X, Section 1 of the West Virginia Constitution provides that "taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value ..." Moreover, "no one species of property for which a tax may be collected shall be taxed higher than any other species of property of equal value."

22. Mountain America asserts that Todd Goldman testified that for the several dozen parcels in Walnut Springs, the County Assessor's values ranged anywhere from a low of 15% of recent

■ Mountain America argues that in appealing a tax assessment, a showing sufficient to obtain relief can be made "upon the presentation of competent evidence, such as that equivalent to testimony of qualified appraisers, that the property has been under- or over-appraised by the tax commissioner or wrongly assessed by the assessor." *Kline v. McCloud,* 174 W.Va. 369, 373, 326 S.E.2d 715, 719 (1985). Thus, it asserts that because it proved that its property was overvalued and made a showing that the tax appraisal was erroneous, the Assessor was bound to rebut the taxpayer's evidence[23] but could not adequately do so.

Specifically, Mountain America asserts that the Assessor could not adequately explain the basis of her assessment and could not identify or explain the various tests undertaken by the State Tax Department to measure the fairness and equality of the Monroe County land books. It also alleges that the Assessor admitted that when she valued the residue, she took into consideration that its "proposed use" was residential, but West Virginia Code § 11–3–1b(c)(2000)(Repl. Vol. 2008)[24] prohibits an Assessor from considering a proposed future use of property. It believes that the Assessor acted arbitrarily in designating Walnut Springs as its own "neighborhood," as it was not equal and uniform with other comparable properties in the area. The Appellees dispute Mountain America's assertion and claim that the Assessor used the correct valuation methodology under West Virginia Code § 11–3–1 to determine the true and actual value of the Walnut Springs properties.

■ " 'As a general rule, there is a presumption that valuations for taxation purposes fixed by an assessor are correct. . . . The burden is on the taxpayer challenging the assessments to demonstrate by clear and convincing evidence that the tax assessment is erroneous.' Syllabus point 2, in part, *Western Pocahontas Properties Ltd. v. County Commission of Wetzel County,* 189 W.Va. 322, 431 S.E.2d 661 (1993)." Syl. Pt. 8, *Bayer MaterialScience, LLC, v. State Tax Commissioner,* 223 W.Va. 38, 672 S.E.2d 174 (2008); *See also* Syl. Pt. 5, in part, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community,* 223 W.Va. 14, 672 S.E.2d 150 ("A taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such assessment is erroneous.").

■ Article X, Section 1 of the West Virginia Constitution requires that "all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." For taxation purposes, property is to be assessed "at its true and actual value." W. Va.Code § 11–3–1. "True and actual value" has been defined as "market value"[25] and "the price paid for property in an arm's length transaction." *Kline v. McCloud,* 174 W.Va. at 372, 326 S.E.2d at

sales prices to a high of 438% of recent sales prices, with an average value of 152% of documented recent sales prices. Mr. Goldman also sampled several dozen properties throughout the county sold after July 1, 2006, and those properties were assessed, on average, at 47.13% of their true and actual values as reflected by their recent sales prices.

**23.** Pursuant to *In Re Pocahontas Land Co.,* 172 W.Va. 53, 61, 303 S.E.2d 691, 699 (1983), once a taxpayer makes a showing that tax appraisals are erroneous, the Assessor is then bound by law to rebut the taxpayer's evidence.

**24.** West Virginia Code 11–3–1b(c) provides:

The designation of proposed land use by a county or municipal planning authority may not be used or considered by an assessor in determining the appraised value of property included under a designation of proposed land use by a county or municipal planning authority until such time as the actual use of the real property has changed to correspond to the proposed use. For purposes of this subsection, the actual use of real property shall be treated as having changed to correspond to the proposed use as improvements on the property necessary for the proposed use are completed: Provided, That in valuing the property before its change to actual use, the assessor may consider the factors described in subsection (b) of this section.

**25.** *See* Syl. Pt. 3, in part, *Killen v. Logan County Comm'n,* 170 W.Va. 602, 295 S.E.2d 689 (1982), overruled on other grounds by *In re Tax Assessment of Foster Found.'s Woodlands Ret. Cmty.,* 223 W.Va. 14, 672 S.E.2d 150; *see also Kline v. McCloud,* 174 W.Va. at 372, 326 S.E.2d at 718 (true and actual value means fair market value, which is what the property would sell for if it were sold on the open market.)

719. "The price paid for property is not conclusive as to value, but it may be a very important element of proof where there has been an open transaction between competent parties dealing at arm's length as appears from the evidence ... In many jurisdictions, evidence of current market value is given substantial, if not conclusive, weight." *Id.* (citations omitted). A taxpayer whose property is assessed at true and actual value must show *more than* the fact that other property is valued at less than true and actual value in order to obtain relief under Article X, Section I. *Id.* (emphasis added). "To obtain relief, he must prove that the undervaluation was intentional and systematic." *Id.*

Upon our review of the record, we conclude that the circuit court did not err by upholding the challenged tax assessment because Mountain America has not sufficiently sustained its burden of proof. Mountain America had the burden of proving that the Assessor's valuation was excessive, but it did not offer any evidence of the true and actual value of the residual property. At the hearing before the County Commission, Mountain America did not offer an appraiser's opinion of the value of its residue, any evidence as to what it paid to purchase this residue, or any evidence as to the listing price for any of the unsold residue property. While Mountain America's expert appraiser, Mr. Goldman, testified that all of the taxpayers' properties were assessed at an average value of 152% of documented recent sales prices, and that several other dozen properties throughout the county sold after July 1, 2006, were assessed, on average, at 47.13% of their true and actual values as reflected by their recent sales prices, he did not provide testimony as to his opinion of the true and actual value of Mountain America's residual property.

Conversely, the Assessor testified that she created a new neighborhood for Walnut Springs because the unimproved real property sold by Mountain America and its entities was significantly higher than any other unimproved real property being sold elsewhere in Monroe County. Before doing so, the Assessor spoke to the West Virginia Department of Revenue. She also asserts that according to the State Tax Department Notice 2006–16,

issued on January 31, 2006, a subdivision may stand alone as a "neighborhood" if it is unique. The Assessor determined that there was no comparable development in the county offering the amenities and covenants touted by Walnut Springs.

The record before us reflects that with the high purchase prices of the properties when they are sold, the Assessor's use of such a "neighborhood" for Walnut Springs was consistent with applicable law and effected a fair assessment of Mountain America's property. The Assessor undertook the valuation of real properties owned by the Appellants in Walnut Springs, which, on July 1, 2006, included some developed lots and undeveloped residue. In creating the neighborhood, the Assessor considered the following information concerning the real property: parcel size, roads, topography, cost, type, and quality of improvements. In calculating the 2007 real property assessments for Walnut Springs, the Assessor compiled a list of sales in the development for the period from July 1, 2005, to June 30, 2006. She then calculated the price per acre for each sale which occurred during that time period. Once the price per acre for each sale was calculated, she took the average of all sales during that period. The calculated unit price per acre was $29,236, a figure significantly higher than any other real property sales in Monroe County.

Furthermore, as an accommodation to the landowners, the Assessor attempted to lower the per acre assessment in the neighborhood by striking the two highest sales and the two lowest sales and recalculating the average price per acre. The calculated unit price per acre based on actual sales was $28,502. She then entered the neighborhood information into the real estate mass appraisal software (CAMA), and again lowered the assessment per acre to $26,900 in a further attempt to lower the tax burden on the landowners. Once all of the information was entered into the CAMA software, the residual property value for the neighborhood was calculated at approximately $5,400 per acre, a figure significantly lower than the asking price for such acreage.

We find that it was appropriate, based upon our existing law, for the Assessor to utilize the "market value" or "the price paid for property in an arm's length transaction" in assessing the "true and actual value" of Mountain America's property. Other than disagreeing with the appraised values the Assessor obtained by following the appraisal methods prescribed by West Virginia law, Mountain America has not demonstrated by clear and convincing evidence that the Assessor's assessment of its property was incorrect. Therefore, we find no abuse of the Assessor's discretion. Having found no abuse of the Assessor's discretion in rendering the subject assessment, we affirm the circuit court's order affirming the County Commission's decision upholding the Assessor's assessment.

### D. Intentional and Systematic Under–Assessments

Additionally, Mountain America argues that the Equal Protection Clauses of both the state and federal constitutions do not allow the Assessor to intentionally and systematically assess recently sold properties at or above their current selling prices, while not making comparable adjustments to properties that have not been recently sold. In support of its argument, Mountain America cites to *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), wherein the Supreme Court held that the property tax valuations set by the Assessor of Webster County, West Virginia violated the Equal Protection Clause. In *Allegheny*, the assessor set the value of certain real property at a figure equal to 50% of the price paid during a recent arm's length sale, but the values of the recently sold property were set at roughly eight to thirty-five times more than the values of comparable neighboring property which had not been recently sold. The Supreme Court concluded that the Webster County Assessor's process systematically and intentionally discriminated against the taxpayers. *Id.*

Mountain America asserts that the facts of this case are so similar to *Allegheny* that the circuit court erred in finding that the Assessor's process here did not systematically and

intentionally discriminate against it. Specifically, it argues that the State Tax Department's testing clearly shows that generally, property tax values throughout Monroe County are suspect and have been for years. It also asserts that the Assessor admitted that she was aware of the systematic undervaluation but claimed that she was attempting to alleviate years of undervaluation by undertaking annual across-the-board increases of six percent of all real property values in the county. Mountain America believes the Assessor's plan is problematic because if the base values are not fair, equal, and uniform in proportion to fair market value as to all the properties within a particular species, any equal across-the-board increase of all those properties will simply assure a perpetuation of the problem.

The County Assessor responds that Mountain America simply failed to present evidence to prove that the assessments were incorrect because they never articulated what they believe the value of their properties to be. They argue only that other properties in the county are undervalued for a short time period, and that the state and federal Equal Protection Clauses do not require immediate general adjustments by an Assessor. Rather, a landowner must establish a history of unequal treatment of similarly-situated property. The County Commission echoes these arguments, and also asserts that Mountain America misconstrues *Allegheny Pittsburgh Coal Co. v. County Comm'n*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688, because in that case, the taxpayers showed that other "comparable" property in Webster County, West Virginia was worth substantially the same as their property but was "intentionally and systematically" assessed at lower values by the county. The properties in Walnut Springs have not been shown to be comparable to any other property in Monroe County.

As we held in *Kline v. McCloud*, "[t]he Equal and uniform clause of Section 1 of Article X of the West Virginia Constitution, requires a taxpayer whose property is assessed at true and actual value to show *more than* the fact that other property is valued at less than true and actual value. To

obtain relief, he must prove that the undervaluation was intentional and systematic." Syl. Pt. 1, *Kline v. McCloud*, 174 W.Va. 369, 326 S.E.2d 715 (emphasis added). Indeed, "[t]he rule is well settled that a taxpayer, although assessed on not more than full value, may be unlawfully discriminated against by undervaluation of property of the same class belonging to others . . . But, unless it is shown that the undervaluation was intentional and systematic, unequal assessment will not be held to violate the equality clause." *Id.* at 374, 720.

Upon review of the facts in the record in this case, we conclude that the circuit court did not commit error in ruling that Mountain America failed to meet its burden to prove that other comparable property was intentionally and systematically under valued. In *Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688, the Supreme Court held that assessments made on real property by the Webster County Assessor violated the Equal Protection Clause because the taxpayers showed that other "comparable" property in Webster County was worth substantially the same as their property but was "intentionally and systematically" assessed at lower values by the county. *Id.* at Syl. Pts. 2 and 3. Therein, the taxpayers' property had been assessed at roughly eight to thirty-five times more than comparable neighboring property and these discrepancies had continued for more than ten years with little change. The Court determined that the county's adjustments to assessments that were carried over were too small to seasonably dissipate the disparity. *Id.*

Below, Mountain America was not able to show that the properties within Walnut Springs were in fact "comparable" to surrounding properties. In fact, rather than being comparable, Walnut Springs lots were touted to be unique, superior, and more valuable than surrounding properties. The higher sales prices for Walnut Springs property are likely due to the fact that the lots contain amenities only available in this particular neighborhood. Herein, the record before the circuit court showed that the property that surrounded the property in question has al-

ways sold for prices much below the price of lots in Walnut Springs, and thus, the lower sales prices cause the adjoining property to be assessed at a much lower rate.

Furthermore, even assuming *arguendo* that Walnut Springs properties were comparable to other properties in Monroe County and disparate treatment had occurred, we still find the facts of *Allegheny Pittsburgh Coal* distinguishable from the instant case. In *Allegheny*, the taxpayers showed that the assessor failed to make valuation adjustments to comparable land for more than ten years. 488 U.S. at 343, 109 S.Ct. at 638, 102 L.Ed.2d at 697. The Supreme Court held:

> As long as general adjustments are accurate enough over a short period of time to equalize the differences in proportion between the assessments of a class of property holders, the Equal Protection Clause is satisfied. Just as that Clause tolerates occasional errors of state law or mistakes in judgment when valuing property for tax purposes . . . [citations omitted] . . . it does not require immediate general adjustment on the basis of the latest market developments. In each case, the constitutional requirement is the seasonable attainment of a rough equality in tax treatment of similarly situated property owners.

*Id.*

This Court has likewise recognized that

> "[t]he system of taxation unfortunately will always have some inequality and nonuniformity attendant with such governmental function. It seems that perfect equality in taxation would be utopian, but yet, as a practicality, unattainable. We must satisfy ourselves with a principle of reason that practical equality is the standard to be applied in these matters, and this standard is satisfied when the tax system is free of systematic and intentional departures from this principle."

*Kline*, 174 W.Va. at 374, 326 S.E.2d at 720 (*quoting Meyer v. Cuyahoga County Bd. of Revision*, 58 Ohio St.2d 328, 390 N.E.2d 796 (1979)). A disgruntled landowner must establish a history of unequal treatment of similarly-situated property. *See, e.g., Petition of Maple Meadow Min. Co. for Relief*

*from Real Property Assessment for Tax Year 1992,* 191 W.Va. 519, 446 S.E.2d 912 (1994).

As a matter of practicality, not all property in the county can be revalued at one time. For this reason, West Virginia Code § 11–1C–1 requires a county assessor to revalue every parcel in the county every three years. Walnut Springs is a new development and the 2007 tax year is the first year in which an assessment dispute has arisen. Thus, assuming a disparity did exist between the Walnut Springs assessments and other properties found to be comparable thereto, the Assessor would necessarily be given the opportunity to make "seasonable attainment of a rough equality" over a short period of time. Accordingly, we affirm the circuit court's ruling finding that Mountain America failed to show that other such property was intentionally and systematically under valuated.

## IV.

### CONCLUSION

For the foregoing reasons, the January 28, 2008, order of the Circuit Court of Monroe County is hereby affirmed.

**Affirmed.**