428 S.E.2d 56

**EASTERN AMERICAN ENERGY CORPORATION, Petitioner Below, Appellant,**

v.

Robert W. **THORN,** Assessor of Wirt County, and C. Richard Boice, Commissioner of the County Commission of Wirt County, Paul Bumgarner, Commissioner of the County Commission of Wirt County, and Harry Matheny, Commissioner of the County Commission of Wirt County, in Their Capacities as County Commissioners and in Their Capacities as Members of the County Board of Equalization and Review, Respondents Below, Appellees.

James H. Paige, III, State Tax Commissioner, Intervenor.

No. 21276.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 26, 1993.

Decided Feb. 25, 1993.

# 76

Tammy J. Owen, Rebecca L. Stafford, Goodwin and Goodwin, Charleston, for appellant.

William G. Mercer, Wirt County Pros. Atty., Elizabeth, for appellees.

Darrell V. McGraw, Jr., Atty. Gen., James J. Alex, Special Asst. Atty. Gen., Charleston, for intervenor.

PER CURIAM:

Eastern American Energy Corporation appeals the 1991 tax year assessment of $3,277,035 for its extraction or stripping plant, located in Wirt County. The basis for the assessment was a recent appraisal by the State Tax Commissioner. Eastern maintains that the plant should be appraised at $948,000, the amount it paid for

the plant on October 1, 1989. After both the Wirt County Board of Equalization and Review and the Circuit Court of Wirt County affirmed the $3,277,035 assessment, Eastern appealed to this Court. Although we have considered the price Eastern paid for property in 1989, we find that under the circumstances of this case, the purchase price, standing alone, is insufficient to show by a preponderance of the evidence that the State Tax Commissioner's appraisal is incorrect and, therefore, we affirm the decision of the circuit court.

Effective October 1, 1989, Eastern Pipeline Corporation, a wholly owned subsidiary of Eastern, purchased an extraction or stripping plant, located primarily in Wirt County, from Kidde Industries, Inc., an unrelated company. The plant's total purchase price was $950,000, with $948,000 allocated for the portions located in Wirt County and with $1,000, each, allocated for the portions located in Wood and Ritchie Counties. During the fourteen to twenty-four months of negotiations before the agreement of sale, Eastern's offer of $950,000 remained constant. According to Charles Supcoe, Eastern's General Counsel and Vice President of Administration, Kidde sold the plant as part of an oil and gas property divestiture, although Kidde continues to operate an oil and gas equipment business. Mr. Supcoe said Kidde had "been shopping around for almost 2 years and hadn't been able to sell it, and the only way they were able to sell was when they came to terms with us on a purchase and sales agreement."

Mr. Supcoe testified that Eastern used an income valuation analysis of the plant's production to determine the plant's purchase price. Mr. Supcoe said that Eastern did not "individually look at the personal property per se, but the ability of cash flow and revenue that may be generated over a certain period of time and discounted back to the present value." Mr. Supcoe also said that in 1987 when Eastern initially offered $950,000, the plant was running at less than a third of capacity. Mr. Supcoe testified that he did not know the value of the plant's machinery, equipment or pipe-

lines individually, but rather Eastern "valued the business as a whole relating to the net cash flow with the projected revenues."

On the 1990 personal property tax books, the plant's taxable assessment was $2,257,852, which included $6,174 for vehicles and $2,251,678 for other property. On September 19, 1990, Eastern filed its business property return with the Wirt County Assessor and the return listed the plant's new cost value as $938,031 and its current value as $902,342.[1] By letter dated February 22, 1991, the Wirt County Assessor, on instructions from the Wirt County Commission, notified Eastern that "the assessed value of [Eastern's] pipe line" had been added for a total county assessment of $3,227,035, which would be taxed at 70% or $2,258,924.

The county's 1991 assessment of the plant was based on an appraisal of the State Tax Department.[2] Although titled "1990 Appraisal of Darenco, Inc." (Darenco was a predecessor in the chain of title to Kidde and the State Tax Department did not have an update on ownership), the state appraisal notes February 1991 as the physical inspection date, 1990 as the base year and "910408" as the run date.[3] The state appraisal provided the following valuations:

| MACHINERY & EQUIPMENT | REPLACEMENT VALUE | APPRAISED VALUE |
| --- | --- | --- |
| Plant's Booster Station [4] | $ 689,136 | $ 365,242 |
| Gas Processing Plant [5] | $2,048,360 | $1,035,101 |
| Main Pipeline | $2,061,024 | $1,092,343 |
| Pipeline Gathering System | $4,067,392 | $2,155,718 |
| 580C Case | $ 29,483 | $ 16,216 |
| TOTAL REPLACEMENT VALUE | $8,205,259 | $4,349,378 |

Eastern protested the assessment and after the County Board of Equalization and

1. In the machinery and equipment section of the business property return Eastern did not itemize either its machines, equipment or their cost. Rather, Eastern listed only the total value.

2. Although the parties agree that the county appraisal is based on the state appraisal, the county appraisal is not identical to the state appraisal. In his brief the State Tax Commissioner maintains if his department had "valued the property for tax year 1991 the value would probably have been *higher* than the county's value ... [because] the appraisal in the record does not include our values for the buildings owned by taxpayer."

3. Although the state appraisal is part of the record and was considered by the circuit court, the record contains no explanation of the state appraisal.

4. The state appraisal's description of the booster station noted that the station consisted of:
1—ARIEL BOOSTER COMPRESSOR, 1—IMC COMPRESSOR, 1—DARENCO SUCTION SCRUBBER, 1—DARENCO SUCTION BOTTLE, 1—DARENCO DISCHARGE BOTTLE, 1—DARENCO SEPARATOR, [and] 1—DARENCO SCRUBBER (1984).

5. The state appraisal's description of the gas processing plant noted the plant had a 3.5 MMCF per day capacity and consisted of:
1—R & R REFRIGERANT CONDENSER, 1—REFRIGERANT COMPRESSOR, 1—PRECOMPRESSOR, 1—IMC STARTING AIR COMPRESSOR, 1—KREUGER GAS EXCHANGER, 1—KREUGER GAS CHILLER, 1—DARENCO PROPANE EXCHANGER, 1—KREUGER STABILIZER REBOILER, 1—SMITH PRODUCT COOLER, 1—AERCO-SPIREC GLYCOL EXCHANGER, 1—DARENCO GLYCOL FILTER, 1—GOULDS GLYCOL PUMP, 1—WHEATLEY GLYCOL PUMP, 1—BLACKMER LOADING PUMP, 1—DARENCO GLYCOL STILL, 1—DARENCO WATER KNOCKOUT, 1—DARENCO 3-PHASE SEPARATOR, 1—DARENCO FUEL SCRUBBER, 1—DARENCO SCRUBBER, 1—DARENCO ECONOMIZER, 1—DARENCO FLASH TANK, 1—DARENCO OIL TRAP, [and] 1—TRINITY PRODUCT STORAGE (1984).

Review refused to reduce the assessment, Eastern appealed to the circuit court. The circuit court conducted a full hearing during which Eastern was able to introduce evidence supporting its position. The circuit court found that Eastern failed to show by a preponderance of the evidence that the county assessment was incorrect. Eastern then appealed to this Court arguing that the proper indicator of the plant's true and actual value is the arm's length purchase price.

■ *W.Va.Code* 11–3–1 [1977] requires that property be assessed at the "true and actual value."[6] " 'True and actual value' means fair market value—what property would sell for if sold on the open market. (Citations omitted)." *Kline v. McCloud* 174 W.Va. 369, 372, 326 S.E.2d 715, 718 (1984). In the past we have generally presumed the official assessment to be correct and have placed on the taxpayer the burden of showing by a preponderance of evidence any error in the official assessment. In Syllabus Point 7, *In re Tax Assessment Against Pocahontas Land Co.,* 172 W.Va. 53, 303 S.E.2d 691 (1983), we said:

> It is a general rule that valuations for taxation purposes fixed by an assessing officer are presumed to be correct. The burden of showing an assessment to be erroneous is, of course, upon the taxpayer, and proof of such fact must be clear.

*See In re: National Bank of West Virginia at Wheeling,* 137 W.Va. 673, 687, 73 S.E.2d 655, 664 (1952); *Bankers Pocahontas Coal v. County Court of McDowell County,* 135 W.Va. 174, 179, 62 S.E.2d 801, 804 (1950).

■ We have also recognized that as long as the property changes hands in an arm's length transaction, the price paid for the property is strongly indicative of its true and actual value. In Syllabus Point 2,

*Kline, supra,* 326 S.E.2d 715 (1984), we said:

> The price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value. Such evidence may not be rejected in favor of a Tax Commissioner's old appraisal.

*See Crouch v. County Court of Wyoming County,* 116 W.Va. 476, 477, 181 S.E. 819, 819 (1935) (holding that the "price paid for property is not conclusive as to value, but it may be a very important element of proof").

In the present case, Eastern purchased the plant for $950,000 in 1989 from an unrelated company. However Mr. Supcoe, Eastern's vice president, said the $950,000 offer was initially made almost 2 years earlier and was calculated on the plant's income value rather than on a cost approach. Although Mr. Supcoe testified to the results of the income value approach, he did not provide the details or the calculations used by Eastern. Mr. Supcoe also said that the seller was motivated to accept Eastern's offer after almost two years of negotiations because it wanted to divest itself of oil and gas property. The county appraisal was based on an appraisal by the State Tax Commissioner prepared for the 1991 tax year using a cost approach. The record contains no evidence that compares the two approaches or shows that one of these valuation methods is superior to the other.

■ In *Killen v. Logan County Comm'n,* 170 W.Va. 602, 295 S.E.2d 689 (1982), we emphasized that the party objecting to the county assessment must show by a preponderance of the evidence that the county assessment is incorrect. Syllabus Point 8, *Killen* said:

> An objection to any assessment may be sustained only upon the presentation of

---

6. *W.Va.Code* 11–3–1 [1977] provides, in pertinent part:
   All property shall be assessed annually as of the first day of July at its true and actual value; that is to say, at the price for which such property would sell if voluntarily offered

for sale by the owner thereof, upon such terms as such property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if such property were sold at a forced sale....

competent evidence, such as that equivalent to testimony of qualified appraisers, that the property has been under- or over-valued by the tax commissioner and wrongly assessed by the assessor. The objecting party, whether it be the taxpayer, the tax commissioner or another third party, must show by a preponderance of the evidence that the assessment is incorrect. ˆ

 Although the price paid by Eastern is an indicator of the plant's true and actual value, under the circumstances of this case, the price standing alone is insufficient to show by a preponderance of the evidence that the county assessment is incorrect. We note that the purchase price was based on an offer originally made in 1987 when the plant was operating at less than a third of capacity and was accepted by a company seeking to divest its oil and gas property. We also note that Mr. Supcoe, the only witness for Eastern, did not know what assets Eastern owned in Wirt County and was unable to place an individual value on Eastern's equipment, machinery or pipelines. Neither was Eastern able to show why its income valuation approach was superior to the replacement cost approach used by the county.

Because the record does not show that Eastern met its burden of showing by clear and preponderating evidence that the county assessment was incorrect, we find that circuit court was correct in affirming the county assessment for the plant.

For the above stated reasons, the decision of the Circuit Court of Wirt County is affirmed.

Affirmed.