IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

_____

No. 11-1768

_____

FILED

November 21, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CHARLES R. WRIGHT and LINDA D. WRIGHT,
Petitioners Below, Petitioners

v.

ANGELA BANKS, ASSESSOR OF JEFFERSON COUNTY,
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Jefferson County
The Honorable David H. Sanders, Judge
Civil Action No. 11-AA-1

REVERSED AND REMANDED

_____

Submitted: October 2, 2013
Filed: November 21, 2013

Charles R. Wright                           Stephanie F. Grove, Esq.
*Pro Se*                                     Assistant Prosecuting Attorney
Ranson, West Virginia                       Charles Town, West Virginia
                                             Counsel for Respondent

The Opinion of the Court was delivered PER CURIAM.

CHIEF JUSTICE BENJAMIN concurs and reserves the right to file a concurring Opinion.

JUSTICE LOUGHRY dissents and reserves the right to file a dissenting Opinion.

SYLLABUS BY THE COURT

"'"An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syllabus Point 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted).' Syllabus Point 3, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)." Syllabus Point 2, *Mountain America, LLC v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009).

Per Curiam:

Petitioners Charles and Linda Wright appeal an order by the Circuit Court of Jefferson County affirming the decision of the Jefferson County Board of Equalization and Review ("Board of Review"). The Wrights purchased a house on June 23, 2010, for $234,000.00. Six months later, on December 30, 2010, the Jefferson County Assessor ("Assessor") appraised the property and found its fair market value was $355,200.00. The Wrights appealed the Assessor's valuation of their property to the Board of Review. The Board of Review ruled in favor of the Assessor and upheld the $355,200.00 valuation. Thereafter, the circuit court affirmed the Board of Review's order.

On appeal, the Wrights argue that the circuit court erred by failing to apply previous rulings of this Court which have held that the price paid for real estate in a recent arm's length transaction is a substantial indicator of the property's true and actual value. Additionally, the Wrights argue that the circuit court erred by accepting the Assessor's conclusion that the $234,000.00 purchase price the Wrights paid for the property was an "anomaly." The Wrights argue that their purchase of the property was in an arm's length transaction on the open real estate market. They assert that the Assessor did not investigate or analyze their sale or present any evidence that the sale was an "anomaly."

After review, we find that the circuit court was plainly wrong by failing to consider the June 23, 2010, purchase price of the property. The circuit court's order states that the Wrights "did not offer any competent evidence" in opposition to the Assessor's

1

testimony that the true and actual value of the property was $355,200.00. However, the record shows that the Wrights presented undisputed evidence that their property was purchased in a recent arm's length transaction on the open market for $234,000.00. This Court has held that the price paid for real estate in a recent arm's length transaction is a substantial indication of its true and actual value. *Crouch v. County Court of Wyoming County*, 116 W.Va. 476, 477, 181 S.E. 819, 819 (1935). Further, this Court has stated that "the price paid for a parcel of land in a recent arm's length transaction is an indicator of market value on a par with the testimony of a qualified appraiser." *Kline v. McCloud*, 174 W.Va. 369, 373, 326 S.E.2d 715, 719 (1985). Because the circuit court failed to consider the purchase price of the Wrights' property, we reverse the circuit court's order affirming the Board of Review.

## I. Factual & Procedural Background

David and Irene Park listed their two-story house for sale in December 2009 for $229,995.00.[1] On June 23, 2010, the Wrights purchased the house from the Parks for $234,000.00. It is undisputed that this was an open market sale. In December 2010, the Wrights were informed by the Assessor that their property was being valued at

---

[1]The property is located at 166 Watercourse Drive in Jefferson County, West Virginia. The property is situated on .13 acres. The house was built in 2007. The Assessor stated that the house has 4,260 square feet.

$355,200.00 for the 2011 tax year. The property was assessed for ad valorem tax based upon the $355,200.00 valuation. The Wrights filed a timely appeal of this assessment to the Board of Review.

The Board of Review held a hearing on February 10, 2011. June Bowers, a senior appraiser for the Assessor's Office, testified at this hearing that the property was properly valued at $355,200.00.[2] Ms. Bowers stated that a valuation is made after collecting information on the house including its age, the quality of the construction material used and the house's "amenities." However, Ms. Bowers testified that she had not been inside the Wright's house and she did not offer any testimony about the specific interior "amenities" of the Wrights' house.[3] She noted that the Wrights' house was a "model home" and "in my experience every model home that I've been in does have the higher quality amenities in it. It's got the extras and the bells and whistles that other places wouldn't."

The process to determine the valuation on the Wrights' property included a comparable sales analysis. The circuit court's order described how the Assessor used the collected data and the comparable sales approach to arrive at the assessment:

---

[2]Ms. Bowers testified that the house was appraised at $310,800.00 and that the land was appraised at $44,400.00 for a total value of $355,200.00.

[3]Ms. Bowers testified that she offered to inspect the interior of the house. It is unclear, based on the record before us, why this inspection did not take place. Neither Ms. Bowers, nor the Wrights, testified as to why an interior inspection of the house did not occur.

Next, all sales in the neighborhood for the taxable year are added into the equation, a process that is updated every year. *All sales of an "arm's length" nature are considered by the Assessor*. Unlike appraisals based upon "comparable sales" done in a real estate context where only similar properties of similar size and style are considered and compared by their total estimated market value, for tax purposes all arm's length sales are considered and converted into an average square-foot value for residential space.

(Emphasis added).

Ms. Bowers testified that she compared the Wrights' property to seven "comparable sales" in the neighborhood during the look-back period.[5] She testified that these seven sales were "open market" arm's length transactions. Ms. Bowers stated that the price range for all arm's length transactions ranged from $210,000.00 for a smaller house (2,650 square feet), to a high of $350,000.00 for a larger house (4,296 square feet).

Ms. Bowers stated that she considered and excluded three sales during the look-back period because they were "foreclosure-related sales." Similarly, Ms. Bowers stated that the sale of the Wrights' property, which occurred during the look-back period, "shouldn't be considered because it's an anomaly." Mr. Wright questioned Ms. Bowers at this hearing and asked her to identify the three "foreclosure-related sales" that were omitted from consideration. Ms. Bowers stated that she did not have the data showing the specific sales information on the "foreclosure-related sales."

---

[5]Ms. Bowers testified that the look-back period was from July 1, 2009, to June 30, 2010.

Mr. Wright also testified at the Board of Review hearing. He argued that the best evidence of his property's value was the purchase price paid for the property during the look-back period. He testified that the sale was an open market arm's length transaction for $234,000.00. The Assessor did not present any evidence rebutting Mr. Wright's testimony that the sale occurred in a recent arm's length transaction on the open real estate market. Similarly, no evidence was presented showing that the sellers were under any pressure, compulsion, or duress to sell the property.

At the conclusion of the hearing, the Board of Review ruled in favor of the Assessor and approved the $355,200.00 valuation. Mr. Wright asked the Board to explain why it ruled in favor of the Assessor. Board of Review member Lyn Widmyer stated, "I'm going with what the Assessor said based on the information she's provided." Another Board member, Frances Morgan, stated, "the winning argument for the Assessor for me is that this was a model home that rises above some of these other sales and so I will vote for the Assessor's recommendation."[6] The Wrights appealed the Board of Review's ruling to the circuit court.

The circuit court denied the Wrights' appeal by order entered on November 15, 2011. The circuit court's order recited the testimony offered by Ms. Bowers and Mr.

---

[6]We note that the Assessor did not present any specific information on the Wrights' "model home." Rather, the Assessor testified that, in general, model homes have "higher quality amenities."

5

Wright before the Board of Review. The order notes that Mr. Wright "established that he had indeed purchased his house in June of 2010 for $234,000.00." Despite its finding that the Wrights purchased the property in a recent transaction for $234,000.00, the circuit court nevertheless concluded:

> Because the Petitioners [Wrights] *did not offer any competent evidence to the contrary* and certainly not the clear and convincing evidence it would be their burden to provide, the Court must assume that this appraised value is in line with the State Tax Department mandated range[.]

(Emphasis added). After entry of the circuit court's order affirming the Board of Review, the Wrights filed the present appeal.


## II. Standard of Review

The Wrights ask this Court to reverse the circuit court's order adopting the Board of Review's ruling in favor of the assessor. This Court utilizes "a two-pronged inquiry" in reviewing tax assessment cases, i.e., whether the evidence supports the findings below and whether there was an error of law. *Kline*, *supra*, 174 W.Va. at 371, 326 S.E.2d at 717. This Court has stated that "'"[a]n assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syllabus Point 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted).' Syllabus Point 3, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)."

6

Syllabus Point 2, *Mountain America, LLC v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009).

We note that "[a]s a general rule, there is a presumption that valuation for taxation purposes fixed by an assessor are correct. . . . The burden is on the taxpayer challenging the assessments to demonstrate by clear and convincing evidence that the tax assessment is erroneous." *Mountain America, LLC*, *supra*, 224 W.Va. at 686, 687 S.E.2d at 785 (internal citation omitted).

With these standards in mind, we consider the parties' arguments.

### III. Analysis

The Wrights have challenged the circuit court's order affirming the Board of Review's ruling in favor of the Assessor. Before specifically addressing the Wrights' argument, we note that Article X, Section 1 of the *West Virginia Constitution* requires that "all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law." Further, *W.Va. Code* § 11-3-1 [2010] instructs that all property

> shall be assessed annually as of July 1 at sixty percent of its true and actual value, that is to say, *at the price for which the property would sell if voluntarily offered for sale by the owner thereof*, upon the terms as the property, the value of which is sought to be ascertained, is usually sold, and not the price which might be realized if the property were sold at a forced sale.

7

(Emphasis added).  This Court stated in *Kline* that "determining 'true and actual value' is the first step in taxing real property." 174 W.Va. at 372, 326 S.E.2d at 718.  "True and actual value" has been defined as "market value" and the price paid for property in an arm's length transaction. *Mountain America, LLC*, 224 W.Va. at 686, 687 S.E.2d at 785. Additionally, *W.Va.C.S.R.* § 110-1F-2.24 [1987], provides the following definition of "true and actual value":

> The terms "Value", "Market Value", and "True and Actual Value" shall have the same meaning and shall mean the price at or for which a particular parcel or species of property would sell if it were sold to a willing buyer by a willing seller in an arms length transaction without either the buyer or the seller being under any compulsion to buy or sell: Provided, [t]hat in determining value, primary consideration shall be given to the trends of price paid for like or similar property in the area or locality wherein such property is situate over a period of not less than three (3) nor more than eight (8) years next preceding the base year[.]

This Court has consistently held that the purchase price paid for property in a recent arm's length transaction is a substantial factor in determining the property's true and actual value.  For instance, in Syllabus Point 2 of *Kline*, in part, the Court held that "[t]he price paid for property in an arm's length transaction, while not conclusive, is relevant evidence of its true and actual value."[7]  Similarly, the Court stated in *Eastern Am.*

---

[7]In *Kline*, this Court recognized that "in many jurisdictions, evidence of current market value is given substantial, if not conclusive, weight." 174 W.Va. at 372, 326 S.E.2d at 719. *See  U.S. Oil Co., Inc. v. City of Milwaukee*, 794 N.W.2d 904 (Wis.Ct. App. 2010) (The best information of fair market value for purposes of a property tax

(continued . . .)

8

*Energy Corp. v. Thorn*, 189 W.Va. 75, 78, 428 S.E.2d 56, 78 (1993), overruled, in part, on other grounds by *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, *supra*, that "as long as the property changes hands in an arm's length transaction, the price paid for the property is strongly indicative of its true and actual value." We also recognized this principle in *Crouch*, *supra*, stating, "[t]he price paid for property is not conclusive as to value, but it may be a very important element of proof where there has been an open transaction between competent parties dealing at arm's length[.]" 116 W.Va. at 477, 181 S.E.2d at 819.[8] Finally, this Court has stated that "the price paid for a parcel of land in a recent arm's length transaction is an indicator of market value on a par with the testimony of a qualified appraiser." *Kline*, 174 W.Va. at 373, 326 S.E.2d at 719.

In addition to relying on the purchase price paid for property in a recent arm's length transaction, this Court has stated that "[i]n determining the fair market value

---

assessment is a recent sale of the property at issue.); and *Berea City School Dist. Bd. of Ed. v. Cuyahoga County Bd. of Revision*, 834 N.E.2d 782 (2005) (Ohio Supreme Court held that the purchase price in a recent arm's length transaction was the true and actual value for taxation purposes.).

[8]In *Crouch*, a buyer purchased a tract of land for $75,000.00 in January of 1933. The property was subsequently assessed at approximately $116,000.00 in 1934. This discrepancy caused the Court to observe, "Our attention is first arrested by the fact that the assessed valuation is nearly $50,000.00 in excess of the price for which the property recently sold." *Id.* at 477, 181 S.E.2d at 819. Based on the discrepancy between the purchase price and the assessed value, and on the "lack of evidence in the record tending to establish a basis for the valuations reflected in the assessment," the Court reversed the circuit court's order approving the assessment. *Id.*

of a piece of land, *a county assessor must seek out all information which would enable him to properly fulfill his legal obligation." Id.* at 372, 326 S.E.2d at 718 (Emphasis added, internal citation omitted). Further, the Court stated in *In re Shonk Land Co.*, 157 W.Va. 757, 761, 204 S.E.2d 68, 70 (1974)*,* that an Assessor "is not restricted in his search for information leading to the true and actual value of properties[.]"

A number of learned treatises agree with this Court's statements in *Kline* and *Shonk Land*, and have found that appraisers should obtain all relevant information, including information about the conditions surrounding the sale of the subject property, to determine the property's true and actual value. One treatise concluded that

> [i]t is not sufficient simply to report a prior sale of the property in question; **the sale must be analyzed to determine its relevancy**. If the appraiser finds that the sale did not represent market value and was not an arms-length transaction, that conclusion and the reasoning behind it should also be reported. **It is not enough to state, "Based upon my analysis of the sale of the subject property, which occurred six months ago, I am of the opinion that the sale did not represent market value." Why didn't it represent market value?** If changes in the property since the date of sale – e.g., rezoning, improvement, destruction – render the prior sale meaningless as a reference to current value, these factors must be reported and explained.

J.D. Eaton, *Real Estate Valuation in Litigation*, 202 (2d ed. 1995) (Emphasis added). *Real Estate Valuation in Litigation* also states that "[i]t is imperative . . . that the appraiser investigate and thoroughly analyze any fairly recent sale of the property being assessed." *Id*. at 205. Further, *Real Estate Valuation in Litigation* instructs that the appraiser "should personally verify sales with either the buyer or seller. . . . Verification of a sale with the

10

broker or attorney and the buyer or seller will usually produce the greatest amount of useful, reliable information." *Id.*

Another learned treatise concludes that an appraiser should examine the motivations of the buyer and the seller to arrive at an accurate appraisal: "Data from completed transactions is considered the most reliable value indicator. The appraiser thoroughly researches the prices, real property rights conveyed, financing terms, [and] **motivations of buyers and sellers**[.]" Appraisal Institute, *The Appraisal of Real Estate*, 302 (13th ed. 2008) (Emphasis added).

In the instant case, the Wrights presented evidence to the circuit court that they bought the subject property in a recent arm's length transaction on the open market for $234,000.00. The Assessor did not present any evidence to the circuit court disputing that the sale occurred in a recent arm's length transaction. The Assessor presented no evidence that she investigated or thoroughly analyzed the sale to determine if it should not be considered as a comparable sale. Instead, the Assessor sought to minimize the weight placed on the purchase price of the property by merely stating that the Wrights "got a great deal on a substantial home, [and that the sale was] a stroke of good luck in a down market." However, the Assessor offered no investigation or analysis of the sale to support this statement. Similarly, the Assessor argued that the purchase price of the Wrights' property was an "anomaly." Again, the Assessor presented no evidence of an investigation or analysis of the sale to support this conclusion. The Assessor did not even present evidence that either the sellers or the Wrights were interviewed to determine how

11

the parties arrived at the purchase price or that the sellers were under any pressure, compulsion or duress to sell the property for less than its true and actual value. To the contrary, the record shows that the sellers listed the property on the market for $229,000.00 and that the Wrights purchased the property for $234,000.00 in an arm's length transaction.

Despite this undisputed evidence that the Wrights bought the property in a recent arm's length transaction on the open market for $234,000.00, the circuit court's order concludes that the Wrights "did not offer any competent evidence" to dispute the Assessor's testimony that the property was properly valued at $355,200.00. This finding is a clear error of law under our previous rulings in *Kline*, *Mountain America, LLC, Eastern American Energy*, and *Crouch*. This Court stated in these cases that the purchase price paid for property in a recent arm's length transaction is a substantial element of proof. The purchase price paid for the Wrights' property cannot be excluded from consideration without a thorough investigation and analysis explaining why it is being excluded. Thus, the Wrights undisputed assertion that they purchased the property in a recent arm's length transaction for $234,000.00 was not only "competent evidence" of the true and actual value of the subject property; it is "substantial evidence" of the true and actual value of the subject property.

Lastly, the Assessor refused to consider the sale of the Wrights' property in her comparable sales analysis because of her conclusion that the Wrights' purchase was an "anomaly." We are troubled by this omission. The Assessor did not investigate the

12

conditions of the sale and did not offer any explanation or analysis demonstrating why an arm's length transaction on the open market was an "anomaly."

Based on all of the foregoing, we find that the circuit court's conclusion that the Wrights "did not offer any competent evidence" to dispute the Assessor's testimony that the property was properly valued at $355,200.00, is plainly wrong. We reverse the judgment of the circuit court and remand this matter for further consideration. On remand, the parties may introduce all relevant evidence regarding the true and actual value of the property.

## IV. Conclusion

For the foregoing reasons, the circuit court's November 15, 2011, order affirming the Board of Review is reversed. This case is remanded for further proceedings consistent with this Opinion.

Reversed and Remanded.

13