# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Amy R. Rhoe, a/k/a Amy R. Wise,**
**Petitioner, Petitioner Below**

**vs.)  No. 15-1038** (Berkeley County 14-AA-9)

**Larry A. Hess, Assessor for Berkeley County,**
**West Virginia; Douglas E. Copenhaver, Jr.,**
**President, Berkeley County Council; and**
**Berkeley County Council;**
**Respondents, Respondents Below**

**FILED**

**November 18, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Amy R. Rhoe, a/k/a Amy R. Wise,[1] pro se, appeals the August 17, 2015, order of the Circuit Court of Berkeley County affirming the November 20, 2014, order of the Berkeley County Council which upheld an increased tax assessment on petitioner's real property for the 2014 tax year. Respondents Larry A. Hess, Assessor for Berkeley County, West Virginia; Douglas E. Copenhaver, Jr., President, Berkeley County Council; and Berkeley County Council (collectively "Assessor"), by counsel Norwood Bentley, III, filed a response.[2]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner owns a residence and a small farm located on parcel 21 of map 21A, Hedgesville District 04, Berkeley County, West Virginia.[3] From at least 2005 through the 2013 tax year, there

---

[1]Rhoe is petitioner's married name.

[2]Petitioner complains that Mr. Bentley does not have authority to represent all respondents on the ground that he made an appearance only on behalf of the Assessor. However, petitioner acknowledges that Mr. Bentley is the legal director for Berkeley County. Therefore, we find that Mr. Bentley has the authority to represent all respondents.

[3]According to the property card for petitioner's property for the 2014 tax year, petitioner (continued . . .)

1

was a 48% downward adjustment on the valuation of petitioner's real property based on a flood influence factor. According to the Assessor, an "influence factor" constitutes "a factor serving to either devalue or enhance the value of a particular parcel of land, or portions thereof, relative to the norm for which the base unit values were established." For purposes of establishing base unit values, the Assessor defines petitioner's neighborhood as all the properties along Wimpy's Lane, the road on which petitioner lives.

As applied to the risk of flooding, an influence factor "is reserved for application to those parcels subject to a loss of value due to the potential for periodic flooding when compared to similar lots in the area where this problem does not exist." Given that no other property along Wimpy's Lane had an adjustment based on a flood influence factor and the Assessor's records going back to 2005 did not reveal a reason as to why there was an adjustment regarding petitioner's real property based on such a factor,[4] the Assessor eliminated the 48% downward adjustment in his valuation of petitioner's property for the 2014 tax year. The elimination of the downward adjustment meant that the assessment for the 2014 tax year was $30,600, an increase of $15,160 from the assessment for the 2013 tax year, raising petitioner's property taxes by $112.92. Accordingly, the Assessor sent petitioner a notice of increased assessment dated December 27, 2013. The notice informed petitioner that she could appeal the 2014 tax assessment to the Berkeley County Council, sitting as the board of equalization and review ("board"), if she filed a written protest with the Clerk of the Berkeley County Council by February 20, 2014. The notice listed the board's address and indicated that the board would hear appeals during February of 2014.

Petitioner appealed the Assessor's assessment for the 2014 tax year to the board. Following a February 20, 2014, hearing, the board upheld the tax assessment.[5] Petitioner appealed the board's February 20, 2014, order to the Circuit Court of Berkeley County. By order entered September 25, 2014, the circuit court found that a review of the recording of the February 20, 2014, hearing reflected discussion of exhibits not in the record before the court. Accordingly, the circuit court remanded the case to the board pursuant to West Virginia Code § 11-3-25(c) "for the purpose of developing an adequate record upon which the appeal can be decided." The board held the remand hearing on October 16, 2014. At that hearing, petitioner requested that the parties be allowed to engage in discovery. The Assessor objected on the ground that the purpose of the

---

utilizes one acre for her residence and .41 acres as farmland.

[4]The Assessor's chief deputy, Brad Unger, testified at a November 13, 2014, hearing that the records go back only to 2005 because that was the year during which the Assessor's office changed to a new computer system.

[5]Petitioner complains that the board's February 20, 2014, order was signed only by the board's president rather than by a quorum of the board. The Assessor counters that this issue has been rendered moot given that the February 20, 2014, order was superseded by the board's November 20, 2014, order. We agree with the Assessor and find that we do not need to address this issue.

remand from the circuit court was to allow the parties to enter their exhibits in the record so that the court could consider petitioner's appeal. The board ruled that, because petitioner was confused as to the purpose of the remand, both parties would be provided with thirty days to prepare their exhibits and rescheduled the hearing for November 13, 2014.[6]

At the November 13, 2014, hearing, the parties entered their exhibits into the record and were also permitted to present testimony of witnesses.[7] The Assessor's chief deputy, Brad Unger, testified that an adjustment based on an influence factor was considered "outside the norm" and, therefore, guidance from the West Virginia Tax Department indicates that the reason for any such adjustment should be recorded. Mr. Unger searched the records and could not find any recorded reason for the 48% downward adjustment on the valuation of petitioner's real property. Mr. Unger testified that no other property in petitioner's neighborhood—even those properties, on the other (western) side of Wimpy's Lane, that were in a recognized floodplain—had an adjustment based on a flood influence factor.[8] Given that the placement of a flood influence factor on petitioner's property was "outside the norm" and the requirement under article ten, section one of the West Virginia Constitution for uniform and equal taxation,[9] Mr. Unger stated that the 48% downward adjustment had to be taken off petitioner's property in order to ensure uniform and equal taxation in the Wimpy's Lane neighborhood. In later testimony, the Assessor concurred with Mr. Unger that the Assessor was required to eliminate the downward adjustment in his valuation of petitioner's property.

The board requested that the Assessor introduce a topographical map of petitioner's neighborhood so that it could determine the elevations in that area. Petitioner objected on the ground that a foundation needed to be laid for the map's admission. Petitioner was allowed to question Roger Kirkbright of the Assessor's office as to the origin of the map. Following Mr. Kirkbright's testimony, petitioner withdrew her objection and the topographical map was admitted

---

[6]On appeal, petitioner states that she was also confused as to the role in which the board acted at the October 16, 2014, hearing because, by that time, the board was regularly sitting as the board of assessment appeals rather than the board of equalization and review. However, given that October 16, 2014, hearing was held pursuant to a remand following the board's February 20, 2014, order, we find that the board was acting in its capacity as the board of equalization and review.

[7]Most of the testimony came from petitioner and the Assessor's chief deputy, Brad Unger, and was in support of the parties' respective exhibits as each was introduced into evidence.

[8]Mr. Unger testified that a flood influence factor was not used to make a downward adjustment in the valuation of the properties on Wimpy's Lane that were in the recognized floodplain because those properties were instead valued at a lower rate in recognition of their locations inside the floodplain.

[9]Article ten, section one of the West Virginia Constitution provides, in pertinent part, that "taxation shall be equal and uniform throughout the state, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law."

into evidence.

By order entered November 20, 2014, the board upheld the Assessor's assessment for the 2014 tax year based on Mr. Unger's testimony. The board found, as follows:

> . . . Mr. Unger testified that he was unable to find any documented reason for the flood influence factor . . . to have been applied to the subject property and that its removal was done to make certain that the constitutional requirement of fair and equitable taxation [was met] in Berkeley County. The flood influence factor enjoyed by [p]etitioner was unfair and gave her an advantage over other property owners in the same neighborhood.

According to the topographical map admitted into evidence, petitioner's real property "is not unique in its topography *and is not influenced any differently than other properties in the neighborhood*." (emphasis added). The board further found that, while "the very northwest corner" of petitioner's property may be encompassed by the floodplain that is located on the western side of Wimpy's Lane, the Berkeley County floodplain map, which was also admitted as an exhibit, showed that the property had only 1% annual chance of flooding. Therefore, the board concluded, as follows:

> . . . Petitioner failed to show by clear and convincing evidence that the Assessor's assessment . . . was erroneous. The Assessor, on the other hand, presented a cogent, understandable case, compelling the [board] to be persuaded that the flood influence factor which was removed from consideration of the subject property should never have been applied to the property in the first instance[.]

By order entered August 17, 2015, the circuit court affirmed the board's November 20, 2014, order upholding the 2014 tax assessment on petitioner's property. First, the circuit court rejected petitioner's contention that the December 27, 2013, notice of increased assessment was constitutionally deficient because it did not contain an explanation of why the Assessor removed the 48% downward adjustment on her real property. The circuit court held that, pursuant to this Court's decision in *Lee Trace, LLC v. Raynes*, 232 W.Va. 183, 191, 751 S.E.2d 703, 711 (2013), a notice of increased assessment must sufficiently inform the taxpayer of her right to appeal the assessment and that the notice in this case did so. Next, the circuit court determined that petitioner's due process rights were not violated by the denial of her request for discovery at the October 16, 2014, hearing. Last, the circuit court ruled that the board afforded due process and a fair hearing to petitioner. The circuit court specifically rejected petitioner's contention that the board was "somehow interested in unfairly treating [petitioner]" because some members may have had experience in property development.

Petitioner now appeals the circuit court's August 17, 2015, order affirming the board's November 20, 2014, order upholding the 2014 tax assessment. In syllabus point one of *In re Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008), we held that circuit court orders are reviewed under the following standard:

4

"This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo*." Syllabus point 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996).

On appeal, petitioner first complains that the Assessor's attorney drafted the circuit court's August 17, 2015, order. We find such a complaint does not constitute a basis for reversal because "we concern ourselves not with who prepared the findings for the circuit court, but with whether the findings adopted by the circuit court accurately reflect the existing law and the trial record." *State ex rel. Cooper v. Caperton*, 196 W.Va. 208, 214, 470 S.E.2d 162, 168 (1996).

Next, petitioner contends that she was afforded due process by neither the circuit court nor the board. "Due process of law is synonymous with fundamental fairness." *State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978). With regard to the circuit court's September 25, 2014, remand to the board, petitioner alleges that the circuit court failed to give the parties clear directions as to the remand's purpose. We find that the circuit court provided clear directions by quoting West Virginia Code § 11-3-25(c) in stating the remand was "for the purpose of developing an adequate record upon which the appeal can be decided." Moreover, to the extent that petitioner was confused as to how she was to comply with the September 25, 2014, order, the board provided petitioner with an additional thirty days to prepare her exhibits for introduction into the record. Therefore, we conclude that the circuit court's remand of the case comported with due process of law.

More generally, petitioner asserts that she was deprived of adequate notice and a fair opportunity to be heard. *See Peck*, 162 W.Va. at 422, 249 S.E.2d at 766 (discussing two elements comprising due process of law). With regard to the adequacy of the notice of increased assessment, the Assessor argues that the notice complied with our directive in *Lee Trace* that such a notice should sufficiently inform the taxpayer of her right to appeal the assessment. *See* 232 W.Va. at 191, 751 S.E.2d at 711. We agree and find that the notice of increased assessment in this case comported with due process. Upon our viewing of the recordings of the October 16, 2014, and November 13, 2014, hearings, we further reject petitioner's contention that the board did not provide her with a fair opportunity to be heard. As previously noted, when petitioner exhibited some confusion as to how she was to proceed at the October 16, 2014, hearing, the board rescheduled the hearing to give petitioner an additional thirty days to prepare her exhibits. At the November 13, 2014, hearing, we find that the board attentively listened to petitioner's testimony, as evidenced by the board's questions regarding her exhibits, and also permitted petitioner to question Mr. Kirkbright as to the origin of the topographical map before allowing it into evidence. Accordingly, we conclude that petitioner was afforded due process of law.[10]

---

[10]To the extent that petitioner still makes the allegation that the board was "somehow interested in unfairly treating [petitioner]," we concur in the circuit court's rejection of this allegation on the ground that it is unsubstantiated.

5

Finally, petitioner challenges the Assessor's increased assessment on her real property for the 2014 tax year. Generally, an assessor's valuation of property for taxation purposes are presumed to be correct, and "[t]he burden of showing an assessment to be erroneous is . . .upon the taxpayer[.]" Syl. Pt. 1, *Western Pocahontas Properties, Ltd. v. County Commission of Wetzel County*, 189 W.Va. 322, 431 S.E.2d 661 (1993) (internal quotations and citations omitted). An assessment approved by a board of review and equalization and upheld by the circuit court will not be reversed "unless plainly wrong." Syl. Pt. 3, *id.* at 322-23, 431 S.E.2d at 661-62 (internal quotations and citations omitted). As to the taxpayer's burden of proof, in syllabus point five of *Foster Foundation*, we held that "[a] taxpayer challenging an assessor's tax assessment must prove by clear and convincing evidence that such tax assessment is erroneous." 223 W.Va. at 16, 672 S.E.2d at 152, *overruling*, *Eastern American Energy Corp. v. Thorn*, 189 W.Va. 75, 428 S.E.2d 56 (1993), and *Killen v. Logan County Commission*, 170 W.Va. 602, 295 S.E.2d 689 (1982).

Petitioner contends that there was insufficient evidence to show that the Assessor correctly eliminated the 48% downward adjustment on her property based on a flood influence factor. The board found that, although the burden of proof was on petitioner, *see Western Pocahontas*, 189 W.Va. at 322, 431 S.E.2d at 661, syl. pt. 1, it was the Assessor who presented a compelling case that "the flood influence factor which was removed from consideration of the subject property should never have been applied to the property in the first instance."

Petitioner seeks to undermine the board's conclusion that a flood influence factor should never have been applied by attacking its finding that her property was neither "unique" nor "influenced [by potential flooding] any differently than other properties in the neighborhood." First, petitioner asserts that her property is unique in the Wimpy's Lane neighborhood because she uses it as farmland. The Assessor counters that the fact that a portion of the property is farmland was considered in the valuation of the property. We find that the Assessor took the categorization of petitioner's property into consideration because Mr. Unger testified that the portion of the property used by petitioner as farmland was valued as such.

Second, petitioner contends that it is not impossible that her property may be affected by a flood event. We find that the board took this into account by finding that, while "the very northwest corner" of petitioner's property may be encompassed by the floodplain that is located on the western side of Wimpy's Lane, the Berkeley County floodplain map shows that the property has only 1% annual chance of flooding. Based on our review of the record on appeal, we find that the board's determination is not plainly wrong. Therefore, we conclude that the board did not err in finding that petitioner failed to meet her burden of showing that the Assessor incorrectly removed the flood influence factor on her property and eliminated the 48% downward adjustment of the property's value in his assessment for the 2014 tax year.

For the foregoing reasons, we affirm the August 17, 2015, order of the Circuit Court of Berkeley County.

Affirmed.

**ISSUED:**   November 18, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II