# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0048** (Harrison County 20-P-83-2)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**Joseph Romano, Assessor of**
**Harrison County, and The County Commission of**
**Harrison County, sitting**
**as the Board of Assessment Appeals,**
**Respondents Below, Respondents**

**and**

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0049** (Ritchie County CC-43-2018-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**Arlene Mossor, Assessor of**
**Ritchie County, and Ritchie County Commission,**
**Respondents Below, Respondents**

**and**

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0050** (Harrison County 18-F-235-3)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**Joseph R. Romano, Assessor of**
**Harrison County, and the County Commission**
**of Harrison County,**
**Respondents Below, Respondents**

**and**

1

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0051** (Doddridge County CC-09-2019-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**David Sponaugle, Assessor of**
**Doddridge County, and Doddridge County Commission,**
**Respondents Below, Respondents**

**and**

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0052** (Doddridge County CC-09-2018-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**David Sponaugle, Assessor of Doddridge County,**
**and County Commission of Doddridge County,**
**Respondents Below, Respondents**

**and**

**Antero Resources Corporation,**
**Petitioner Below, Petitioner**

**vs.)  No. 22-0144** (Tyler County 18-AA-1)

**Matthew R. Irby,**
**West Virginia Tax Commissioner,**
**Lisa Jackson,**
**Assessor of Tyler County, and**
**The County Commission of Tyler County sitting**
**as the Board of Assessment Appeals,**
**Respondents Below, Respondents**

## MEMORANDUM DECISION

In these consolidated cases, Petitioner Antero Resources Corporation ("Antero") appeals several business court orders entered in four counties in December 2021 and January 2022. Respondents are State Tax Commissioner Matthew R. Irby ("the tax commissioner"), Doddridge

County Assessor David Sponaugle, Tyler County Assessor Lisa Jackson, Harrison County Assessor Joseph Romano, Ritchie County Assessor Arlene Mossor (collectively, "the assessors"), and the County Commissions of Doddridge, Harrison, and Tyler Counties (collectively, "the county commissions").[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. Proc. 21.

Antero asks us to return to the issues we considered in *Steager v. Consol Energy, Inc.*, 242 W. Va. 209, 832 S.E.2d 135 (2019), wherein we reviewed the tax commissioner's methods of valuing gas-producing wells in this state for the 2016 and 2017 tax years, insofar as the business court relied on that precedent to affirm several tax assessments of Antero's natural resource holdings for the 2018 and 2019 tax years. Pursuing this end, Antero presents six assignments of error. It argues that the business court erred in (1) finding preclusive effect in *Consol Energy, Inc.*; (2) declining to apply a "2020 Guidance" ("the guidance" or "the 2020 guidance") written by the tax commissioner retroactively to the 2018 and 2019 tax years; (3) failing to find that the tax commissioner's refusal to retroactively apply the guidance is arbitrary and capricious and, thus, in violation of the state Administrative Procedures Act; (4) failing to recognize that the tax assessments violate due process principles; (5) failing to recognize that the tax assessments violate state and federal constitutional equal protection principles; and (6) failing to recognize that the tax assessments violate the dormant Commerce Clause of the federal constitution. We review these assignments of error under the following standard:

> "'An assessment made by a board of review and equalization and approved by the circuit court will not be reversed when supported by substantial evidence unless plainly wrong.' Syllabus Point 1, *West Penn Power Co. v. Board of Review and Equalization*, 112 W.Va. 442, 164 S.E. 862 (1932) (other internal citations omitted)." Syllabus Point 3, *In re: Tax Assessment of Foster Foundation's Woodlands Retirement Community*, 223 W.Va. 14, 672 S.E.2d 150 (2008)." Syllabus Point 2, *Mountain America, LLC v. Huffman*, 224 W.Va. 669, 687 S.E.2d 768 (2009).

Syl. Pt. 2, *Lee Trace, LLC v. Raynes*, 232 W. Va. 183, 751 S.E.2d 703 (2013).

Each of Antero's six assignments of error ultimately attacks the tax commissioner's *ad valorem* taxation of the natural resource properties on the ground that the tax commissioner exceeded his authority in declining the deduction of certain post-production expenses from the valuation of gas and oil producing wells.[2] The assessments were upheld by the county

---

[1] Antero appears by counsel Ancil G. Ramey and John J. Meadows. The tax commissioner and the assessors appear by West Virginia Attorney General Patrick Morrisey and Deputy Attorney General Sean M. Whelan. Two county commissions (Harrison and Doddridge) appear by counsel R. Terrance Rodgers and Jonathan Nicol. Another county commission (Tyler) appears by counsel D. Luke Furbee.

[2] *Consol Energy, Inc.* addressed the taxation of gas-producing wells. After remand, Antero asked us to further address the tax commissioner's methodology as it related to wells that produced (continued. . .)

3

commissions, each sitting as a board of review and equalization, and then appealed and referred to the business court. When we considered Antero's challenges to prior tax year assessments in *Consol Energy, Inc.*, the non-deduction of post-production expenses was a central consideration, and we declined to find error in the tax commissioner's assessment, because the tax commissioner's statutory interpretation was reasonable:

> [W]e cannot say that the Tax Department's position that gathering, compressing, processing, and transporting expenses are not "directly related" to the "maintenance and production" of natural gas is arbitrary, capricious, or manifestly contrary to the enabling taxation statute. In accordance with our precedent, its position "must be sustained if it falls within the range of permissible construction." *W. Va. Health Care Cost Review Auth.* [*v. Boone Memorial Hospital*], 196 W. Va. [326] at 339, 472 S.E.2d [411] at 424 [1996]. More importantly, the equity of such an interpretation is well beyond the reach of this Court under these circumstances. It is sufficient to conclude that the Tax Department's exclusion of these expenses from its average expense calculation is a reasonable construction of the regulation and not facially inconsistent with the enabling statute.

*Consol Energy, Inc.*, 242 W. Va. at 223, 832 S.E.2d at 149.

While our analysis of this issue as it affected Antero's 2016 and 2017 tax assessments does not preclude Antero from challenging its later tax assessments on the same ground, the legal precedent is nevertheless controlling.[3] Antero argues, however, that the tax commissioner's guidance, published in June of 2020 (for the 2021 property tax year), changed the landscape of natural resource property assessment, because it effectively communicated a position on an issue over which state law was previously silent. The guidance, prior to its withdrawal in October of 2020, provided, "To avoid having your well overvalued for property tax purposes, it is important that you appropriately adjust actual gross proceeds of sale to properly reflect the gross receipts you would have received had the sales transaction been a field line point of sale." This adjustment, presumably, was designed to account for the post-production expenses associated with delivering a natural resource to a remote market, the very expenses that Antero would deduct in the valuation

---

both oil and gas. *Antero Res. Corp. v. Irby*, Nos. 20-0530, 20-0531, and 20-0579, 2022 WL 1055446 (W. Va. Apr. 8, 2022)(memorandum decision).

[3] Antero's first assignment of error, as noted in the body of this decision, argues that the business court "erred by ruling that Antero's claims in this case were precluded" by *Consol Energy, Inc.* It is apparent from our reading of the business court's orders that, though the business court characterized *Consol Energy, Inc.* as collaterally estopping Antero's claims, the court was discussing the application of *Consol Energy, Inc.* as settled precedent. Certainly, the business court explained that "Antero makes the same arguments with regard to its position as to why postproduction costs should be included in the calculat[ion] in determining its operating expenses" as it did when appearing for *Consol Energy, Inc.* The court applied the settled law to the facts before it, then went on to discuss Antero's additional arguments (such as the potential force of the 2020 guidance) that were not resolved by *Consol Energy, Inc.* We, therefore, find no error in the circuit court's application of *Consol Energy, Inc.* to the facts presented in this case.

4

of its wells. Antero argues that the guidance amounts to a retroactive interpretive rule that permits the deduction of expenses beyond the singular monetary average discussed in *Consol Energy, Inc*.

Upon thorough consideration of the arguments supporting Antero's second and third assignments of error, we disagree that the guidance is a retroactive interpretive rule that binds the tax commissioner to a specified course of action.[4] The characterization of a rule as legislative or interpretive, or indeed the determination of whether a particular communique is a rule at all, can require arduous deliberation. Furthermore, the determination of the nature of a rule significantly controls the force of that rule. *See Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 583-84, 466 S.E.2d 424, 434-35 (1995).[5] However, because Antero does not ask us to characterize the rule as legislative or interpretive, but only to treat it as an interpretive rule, we need not classify the guidance. Instead, we need merely ask whether the characterization of the 2020 guidance as an interpretive rule would have required the circuit court to afford Antero the relief it seeks. We conclude, without determining the nature of the 2020 guidance, that the business court was not clearly wrong in finding that its publication did not affect the analysis we prescribed in *Consol Energy, Inc*.

---

[4] We note that Antero previously raised this issue regarding its 2016 and 2017 tax assessments, and we declined to address it because the 2020 guidance was published after the business court entered its orders related to those tax assessments. *Antero Res. Corp. v. Irby*, Nos. 20-0530, 20-0531, and 20-0579, 2022 WL 1055446, at *5 (W. Va. Apr. 8, 2022)(memorandum decision). We explained that we "will not decide nonjurisidictional questions which were not considered and decided by the court from which the appeal has been taken." *Id*. (quoting, in part, Syl. Pt. 7, *In re Michael Ray T.*, 206 W. Va. 434, 525 S.E.2d 315 (1999)). In asking the business court in this case to consider the application of the 2020 guidance, which was not available to the boards of review and equalization, Antero essentially asked the business court to do what we previously declined to do.

[5] In that case, we explained:

Under West Virginia law, there are three types of rules—legislative, interpretive, and procedural. We are not concerned with procedural rules in this case. Legislative rules are those "affecting private rights, privileges or interests," in what amounts to a legislative act. W. Va. Code, 29A-1-2(i) (1982). Legislative rules have "the force of law[.]" W. Va. Code, 29A-1-2(d) (1982). *See also Chico Dairy Co. v. West Va. Human Rights Comm'n*, 181 W.Va. 238, 382 S.E.2d 75 (1989) (to be valid, the promulgation of legislative rules must be authorized by the West Virginia Legislature). Interpretive rules, on the other hand, do not create rights but merely clarify an existing statute or regulation. *See* W. Va. Code, 29A-1-2(c) (1982). Because they only clarify existing law, interpretive rules need not go through the legislative authorization process. *See* W. Va. Code, 29A-3-1, *et seq*.; *Chico Dairy Co. v. West Virginia Human Rights Comm'n, supra*.

*Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 583, 466 S.E.2d 424, 434 (1995).

"Although they are entitled to some deference from the courts, interpretive rules do not have the force of law nor are they irrevocably binding on the agency or the court. They are entitled on judicial review only to the weight that their inherent persuasiveness commands." *Appalachian Power Co.*, 195 W. Va. at 583, 466 S.E.2d at 434. The 2020 guidance simply is not persuasive in this instance. As explained above, Antero advocates for the application of the rescinded 2020 guidance, initially written for the 2021 tax year, to its 2018 and 2019 tax assessments. In this simplified description of Antero's argument, we find the essence of the business court's determination that the guidance did not rouse the "sea change" that Antero suggests. First, the 2020 guidance was not before the county boards of review and equalization when they considered Antero's challenges to these tax assessments. Second, the post-assessment publication of the 2020 guidance neither affected the calculation for the valuation of the natural resource properties, nor created an expectation on which Antero detrimentally relied. Moreover, the tax commissioner rescinded the 2020 guidance almost immediately on publication. To paraphrase the business court, the 2020 guidance is inadequately persuasive to overcome the *Consol Energy, Inc*. holding affording deference to the tax commissioner's decision to forego the deduction of post-production expenses for valuation of natural resource properties, at least for the 2018 and 2019 tax years.

We turn to Antero's fourth, fifth, and sixth assignments of error, in which Antero argues that the tax commissioner's assessment process breaches several constitutional safeguards. With respect to these arguments, the business court explained:

> As [*Consol Energy, Inc*.] explicitly found that the non-deductibility of those postproduction expenses was permissible, this Court must reject Antero's instant argument that the County Commission's revalued assessment[s . . .] of Antero's wells are impermissible because they do not include the deduction of post-production expenses, which Antero argues violates statutory provisions, is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion and violates constitutional provisions, including the federal and state Due Process Clauses, federal Equal Protection Clause, state Equal and Uniform Taxation Clause, and dormant Commerce Clause.

Antero's assertion that it has been denied due process, which it offers here in a brief, two-paragraph argument that cites no legal precedent, rests entirely on application of the 2020 guidance. We have found the guidance unpersuasive, and we disagree that any statement in it proves a due process violation. Furthermore, equal protection concerns were of considerable importance in our determination of *Consol Energy, Inc*., and Antero's argument here (equal in brevity to that of its due process argument) does not induce us to doubt that we thoroughly considered the equality and uniformity of the provisions at issue. Finally, Antero argues (also somewhat briefly, in view of the magnitude of the accusation) that the denial of the post-production expenses deduction violates the dormant Commerce Clause because it discriminates against interstate commerce and subjects Antero to the risk of multiple taxation.[6] Antero cites no legal authority to support its position that

---

[6] The dormant Commerce Clause prohibits state taxation that would negatively affect interstate commerce.

(continued. . .)

6

the dormant Commerce Clause requires states to allow an entity to deduct the expenses associated with transporting the entity's product to its chosen marketplace. We are presented with no evidence that such a deduction is critical to interstate commerce. We, therefore, find no error in the business court's order.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

**DISQUALIFIED:**

Justice C. Haley Bunn

---

The Commerce Clause grants Congress power to "regulate Commerce . . . among the several States." [U.S. Const.] Art. I, § 8, cl. 3. . . . Although the Clause is framed as a positive grant of power to Congress, "we have consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S.Ct. 1331, [1335,] 131 L.Ed.2d 261 (1995).

. . . .

Under our precedents, the dormant Commerce Clause precludes States from "discriminat[ing] between transactions on the basis of some interstate element." *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332, n. 12, 97 S.Ct. 599, [608, n. 12,] 50 L.Ed.2d 514 (1977). This means, among other things, that a State "may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S.Ct. 2620, [2622,] 81 L.Ed.2d 540 (1984). "Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S.Ct. 357, [362,] 3 L.Ed.2d 421 (1959) (citations omitted).

*Matkovich v. CSX Transportation, Inc.*, 238 W. Va. 238, 244, 793 S.E.2d 888, 894 (2016)(quoting *Comptroller of the Treasury of Maryland v. Wynne*, 575 U.S. 542 (2015)).